EMELINE TAYLOR, PLAINTIFF-APPELLANT, v. NEW JER-
SEY HIGHWAY AUTHORITY, DEFENDANT-RESPOND-
ENT.

Argued October 8, 1956.—Decided November 5, 1956.

*Mr. Irving I. Vogelman* argued the cause for the appellant (*Mr. Raymond A. Brown,* attorney).

*Mr. Philip M. Lustbader* argued the cause for the respondent (*Messrs. Schneider & Schneider,* attorneys).

The opinion of the court was given by

JACOBS, J. In July 1954 the plaintiff Emeline Taylor brought an action in the Superior Court against the New Jersey Highway Authority to recover damages for injuries suffered when she fell on November 7, 1953 at premises located at 276 Main Street, East Orange. At the close of her case the Law Division entered judgment of dismissal and we certified her ensuing appeal while it was pending in the Appellate Division.

The premises consisted of a multi-family dwelling house which until August 5, 1953 was in the exclusive ownership of Anna Jackson, There were at least four tenants who occupied separate apartments and their only access from the street was via an outside common stairway which was under the control of Anna Jackson as owner and landlord. One of the tenants occupying an upper apartment was George Henry Bell whom the plaintiff was visiting on the day of her accident. On August 5, 1953 the defendant, which was engaged in the construction of the Garden State Parkway, filed its condemnation complaint in the Law Division against Anna Jackson seeking to acquire a fee simple absolute in the premises which were properly described by metes and bounds. The order to show cause which was issued upon the filing of the complaint was made returnable on October 16, 1953. However, long before the return date the defendant filed a declaration of taking under *N. J. S. A.* 27:12B–1, *et seq.*—the declaration was received in the clerk's office on August 12, 1953. It set forth that the estimated just compensation for the premises being condemned had been fixed at $42,000 by resolution of the New Jersey Highway Authority; that in compliance with the statute the aforesaid sum had been deposited with the Clerk of the Superior Court; and that by the provisions of the statute the Authority "does hereby, upon the filing of this Declaration, take possession of all of said land, premises and property." On September 11, 1953 an order was entered directing that the aforesaid sum of $42,000 on deposit be paid forthwith to Anna Jackson; this order bore the consent of the Au-

thority, and on September 18, 1953 the $42,000 (less the clerk's statutory fees) was actually paid to Anna Jackson.

After the Authority filed its declaration of taking the tenants, including Mr. Bell, continued the occupancies of their respective apartments without change. Mr. Bell testified that he was a tenant at the premises during most of November 1953 and prior thereto and that he had paid his monthly rentals, although the record is silent as to whom the rent was actually paid. On November 6, 1953 the Authority applied for and obtained an order to show cause returnable November 12, 1953 why an accompanying petition, seeking immediate surrender of the premises to the Authority, should not be granted. The order to show cause was sent to Mr. Bell by registered mail on November 7, 1953. On November 12, 1953 the Law Division entered an order which provided that unless the premises were surrendered by November 19, 1953 the Sheriff of Essex County should oust the persons in possession. Mr. Bell vacated his apartment on November 19; in the meantime, however, the plaintiff's accident had occurred.

The plaintiff was at Mr. Bell's apartment during the evening of November 6, 1953 and slept there overnight because of inclement weather. She testified on direct examination that it had stopped snowing shortly after 11 P. M.; during cross-examination she testified that when she looked out the window "a little after 11 o'clock it didn't seem to be snowing"—"if it was snowing, I wouldn't call it snowing much." When she left the apartment shortly after 8 A. M. on November 7, 1953 she started to descend the common stairway, slipped on the third or fourth step, and suffered personal injuries. She testified that the stairway was exposed to the elements and that there was snow and ice on the steps. An expert testified that the steps were not properly constructed in that their forward pitch was greater than the quarter of an inch per foot which is allowed in standard construction. He also testified that the stairs should have been level except for the slight forward pitch but that he found a horizontal pitch of two or three inches.

In February 1954 the plaintiff instituted an action against Anna Jackson in the Essex County Court. Although this action was referred to by counsel during. oral argument of the appeal in the instant matter it was not mentioned in the briefs or in the appendix. We take judicial notice of it (*In re Breckwoldt*, 22 *N. J.* 271 (1956)), and have referred to the original file in the County Court which discloses that on September 24, 1954 Anna Jackson served notice of motion for summary judgment and verified that after August 5, 1953 she was not in possession or control of the premises and did not exercise any control over them; her motion was granted without opposition and on October 8, 1954 the County Court ordered that judgment be entered in her favor.

In the case now before us the Authority contends that it did not have ownership, possession or control of the premises on the date of the accident (November 7, 1953) and that consequently it then owed no duty of care whatever to Mr. Bell or his invited guest; presumably its position is that ownership, possession and control of the premises continued in Anna Jackson at least until physical possession was taken by the Authority on or after November 19, 1953. At the end of the plaintiff's case she was entitled to the benefit of all of the favorable inferences which might reasonably be drawn from the testimony which she had presented. *O'Donnell v. Asplundh Tree Expert Co.*, 13 *N. J.* 319, 328 (1953) ; *Dobrow v. Hertz*, 125 *N. J. L.* 347, 348 (*E. & A.* 1940) ; *Boyle v. Baldowski*, 117 *N. J. L.* 320 (*Sup. Ct.* 1936). We believe that there was enough in the record to support a finding that prior to November 7, 1953 the Authority had taken possession in legal contemplation and had actual control of the premises, particularly its common stairway.

The statute (*N. J. S. A.* 27:12B–7) provides that upon or after the filing of a condemnation complaint the Authority may file a declaration that possession of the premises "is thereby being taken"; the declaration must set forth, *inter alia,* the estimated just compensation (and the fact that a trust fund has been established as provided in the statute)

and must be accompanied by a deposit of the estimated just compensation. This deposit may be ordered to be paid immediately to the interested party or parties, and in the instant matter it was in fact paid to the owner well in advance of the accident. After it files its declaration of taking and makes its deposit the Authority is "entitled to the exclusive possession" of the premises "and may forthwith enter and take possession" thereof. In the light of the foregoing statutory provisions and the actual circumstances presented, the Authority rather than Anna Jackson may realistically be said to have had legal possession and actual control of the common stairway on the date the accident occurred. Anna Jackson, who had already received the estimated just compensation, was in no position to oust the tenants, or to enter the premises to take necessary precautions, or to care for the common stairway while it still remained in use; indeed it would appear that the only one who was then in any effective position to do so was the Authority itself. See *Rizzi v. Ross,* 117 *N. J. L.* 362, 365 (*E. & A.* 1937): "whether the required repairs were slight or substantial, the ultimate liability must lie somewhere." *Cf. McQuillan v. Clark Thread Co.,* 12 *N. J. Misc.* 409 (*Sup. Ct.* 1934); *James, "Tort Risks of Land Ownership: How Affected by Lease or Sale,"* 28 *Conn. B. J.* 127, 143 (1954); *Prosser, Torts* (*2d ed.* 1955), 463.

The statute sheds little light as to when the strict legal title to the premises actually passed from Anna Jackson to the Authority. *Cf. Delancey & Stockton Corp. v. Reliable Imp. Co.,* 134 *N. J. Eq.* 71, 75 (*E. & A.* 1943); *In re Essex County Park Commission,* 80 *N. J. Eq.* 1, 7 (*Ch.* 1912), affirmed *sub nom., Bowers v. Town of Bloomfield,* 81 *N. J. Eq.* 163, 207 (*E. & A.* 1913). If it did not pass until the final award was formally rendered and paid it may perhaps be related back to the declaration of taking. See *Milmar Estate v. Borough of Fort Lee,* 36 *N. J. Super.* 241 (*App. Div.* 1955). However, we need not pursue the matter for, without regard thereto, legal possession and control by the landlord, or one standing in similar position, will deter-

mine the responsibility to its tenants and their guests, or those standing in similar position, for the care of a common stairway. See *Roth v. Protos,* 120 *N. J. L.* 502, 504 (*Sup. Ct.* 1938); *Weinstein v. Shapiro,* 131 *N. J. L.* 77, 80 (*Sup. Ct.* 1943), affirmed 132 *N. J. L.* 417 (*E. & A.* 1945). *Cf. Schwartz v. Federal Deposit Insurance Corp.,* 127 *N. J. L.* 556, 557 (*E. & A.* 1942). In the *Roth* case Justice Perskie aptly said:

"Defendant had control and possession of the stairway in question. Entirely apart from any contractual obligation, this fact imposed upon her the duty of exercising reasonable care to maintain the stairway reasonably fit for use by occupants of the premises and by others having lawful occasion to be present. *Gillvon v. Reilly,* 50 *N. J. L.* 26, 11 *A.* 481; *Gleason v. Boehm,* 58 *N. J. L.* 475, 34 *A.* 886; *La Brasca v. Hinchman,* 81 *N. J. L.* 367, 79 *A.* 885; *Perry v. Levy,* 87 *N. J. L.* 670, 94 *A.* 569; *Hahner v. Bender,* 101 *N. J. L.* 102, 127 *A.* 202; *Taylor v. Majestic Building & Loan Association,* 14 *N. J. Misc.* 699, 186 *A.* 594; *Restatement, Torts, sec.* 360."

See *Taneian v. Meghrigian,* 15 *N. J.* 267, 271 (1954); *Daniels v. Brunton,* 7 *N. J.* 102, 108 (1951); *White v. Ellison Realty Corp.,* 5 *N. J.* 228, 237 (1950); *Herman v. Home Owners' Loan Corp.,* 120 *N. J. L.* 437, 440 (*Sup. Ct.* 1938), affirmed 122 *N. J. L.* 94 (*E. & A.* 1939); *Boyle v. Baldowski, supra; Peterson v. Zaremba,* 110 *N. J. L.* 529, 531 (*E. & A.* 1933); *Hahner v. Bender,* 101 *N. J. L.* 102 (*E. & A.* 1925). *Cf. Restatement, Torts* § 360 (1934); *Bernstein v. Karr,* 22 *N. J. Misc.* 1 (*Cir. Ct.* 1943).

The record is somewhat obscure as to the precise relationship of the Authority and Mr. Bell between the declaration of taking and the ouster proceeding. However, it is sufficient to justify a finding that during that period Mr. Bell continued his pre-existing tenancy without apparent change and with the express or implied consent of the Authority. *Cf. Gretkowski v. Wojciechowski,* 26 *N. J. Super.* 245 (*App. Div.* 1953); *Tiffany, Real Property* (3d ed. 1939), 249, 250. It must be borne in mind that although the Authority knew that Mr. Bell was continuing his occupancy it took no steps to oust him until the order to show cause returnable November 12, 1953; that order was

first served on Mr. Bell after the accident had occurred. The inference may readily be drawn that for fair reasons sufficient to itself the Authority had permitted Mr. Bell to continue in occupancy until vacation was actually necessitated by the Parkway's uninterrupted construction. In following that course the Authority was aware that Mr. Bell and his guests would use the common stairway which had become its responsibility and that serious injury might result if it was improperly constructed or maintained. It would seem that within modern concepts of justice the Authority could not, in view of the obvious foreseeability of harm, rightly sit back and do nothing whatever for the protection of innocent third parties like the plaintiff, and then seek comfort from the supposed doctrine that in the rigid eyes of the law such parties were to be considered not as invitees but as trespassers or mere licensees to whom no duty of ordinary care was owed. See *Taneian v. Meghrigian, supra; Latzoni v. City of Garfield,* 22 *N. J.* 84 (1956). *Cf. Harris v. Mentes-Williams Co., Inc.,* 11 *N. J.* 559 (1953); *Murphy v. Kelly,* 15 *N. J.* 608 (1954).

Almost 75 years ago the court, in *Heaven v. Pender,* [1883] 11 *Q. B.* 503, 509, expressed the broad principle of negligence in succinct language which has become very well-known:

"whenever one person is placed by circumstances in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."

Although this enlightened principle of due care is taking hold more and more it has throughout our legal history come into conflict with the traditional immunities of owners and possessors of land. It is said that the immunities "stem originally from feudalism and the feeling of sanctity about land ownership." *James, "Inroads on Old Tort Concepts,"* 14 *NACCA L. J.* 226, 229 (1954). *Cf. Bohlen, "The Duty*

of a Landowner toward those Entering his Premises of their
Own Right," 69 U. Pa. L. Rev. 142, 237 (1921); Marsh,
"The History and Comparative Law of Invitees, Licensees
and Trespassers," 69 L. Q. Rev. 182 (1953). In modern
times the immunities have rightly, though gradually, been
giving way to the overriding social view that where there is
foreseeability of substantial harm landowners, as well as
other members of society, should generally be subjected to
a reasonable duty of care to avoid it. Many recent New
Jersey decisions furnish vivid evidence of this trend and
the marvelous adaptability of the common law in reshaping
old doctrines meet the needs of our own period in history.

In Harris v. Mentes-Williams Co., Inc., supra, the defend-
ant had excavated on land which was in his possession and
control and was adjacent to a public school. The plaintiff,
one of the school children, injured himself when he fell on
the defendant's land in a furrow three or four feet deep.
Abandoning the views entertained by New Jersey courts in
an earlier day (Delaware, L. & W. R. Co. v. Reich, 61 N. J. L.
635 (E. & A. 1898); Harrington v. Greidanus, 10 N. J.
Misc. 710 (Sup. Ct. 1932)) and holding that the defendant
owed a duty of ordinary care to the plaintiff, this court
dealt summarily with the traditional distinction between
invitees, licensees and trespassers and stressed rather that
"the condition of the land as changed by the defendant gave
rise to the foreseeable risk of harm." In the course of his
opinion Justice Wachenfeld quoted approvingly from Strang
v. South Jersey Broadcasting Co., 9 N. J. 38, 45 (1952),
where Justice Heher, in sustaining recovery by the infant
plaintiff who had been burned by a fire on the defendant's
premises, said:

"Here, the presence of the child upon the land should have been
anticipated, and from this derives the duty of care and protection.
The basis of liability is the foreseeability of harm, and the measure
of duty is care in proportion to the foreseeable risk."

See Hoff v. Natural Refining Products Co., 38 N. J. Super.
222, 224 (App. Div. 1955); Note, "The Attractive Nuisance

*Doctrine—Its Status in New Jersey,"* 8 *Rutgers L. Rev.* 378 (1954); *Cowan, "Torts,"* 11 *Rutgers L. Rev.* 160, 169 (1956).

In *Murphy v. Kelly, supra,* the question arose as to whether the plaintiff child who had accompanied her mother to the defendant's place of business was to be considered as an invitee to whom the defendant owed a duty of ordinary care insofar as the condition of his premises was concerned. Although *Fleckenstein v. Great Atlantic & Pacific Tea Co.,* 91 *N. J. L.* 145 (*E. & A.* 1917) had earlier embraced a contrary position this court held without dissent that the child was an invitee; it referred to its holding as a logical and equitable rule which tended to fulfill the purposes of our legal system in serving justly the needs of present day society. See *Arrow Builders Supply Corp. v. Hudson Terrace Apts., Inc.,* 15 *N. J.* 418, 426 (1954). *Cf. Prosser, Torts, supra,* 452; *James, "Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees,"* 63 *Yale L. J.* 605, 612 (1954).

In *Taneian v. Meghrigian, supra,* the plaintiff was injured when she fell on a common stairway of an apartment house owned by the defendants. One of the defendant-owners was Najarian, who occupied an apartment in the house and who was being visited by the plaintiff. The trial court directed a verdict for the defendants and was sustained by the Appellate Division which took the position that the plaintiff was a mere licensee to whom the defendants owed no duty of ordinary care. See 27 *N. J. Super.* 177 (1953). This court reversed and pointed out that retention of control over the common stairway in a multi-family house places a duty on the possessor to exercise "reasonable care for safety in use"; that this duty extends "not alone to the individual tenant, but also to his family, servants and employees, business visitors, social guests, and the like"; that such persons come upon the land by invitation of the landlord for the common stairway affords " 'to the tenants and those having lawful occasion to visit their apartments the right of passage to and fro' "; and that the landlord's obligation " 'is that

reasonable care and skill have been exercised to render the premises reasonably fit for the uses which he has invited others to make of them.' " In the course of his opinion, Justice Heher referred to many English decisions including cases in which a comparable responsibility. was placed on public agencies which had requisitioned premises for the relief of persons who were inadequately housed. See *Hawkins v. Coulsdon and Purley Urban District Council*, [1954] 1 Q. B. 319; *Greene v. Chelsea Borough Council*, [1954] 2 Q. B. 127. Compare *Hedges v. Housing Authority of Atlantic City*, 21 *N. J. Super.* 167 (*App. Div.* 1952), with *Casale v. Housing Authority of City of Newark*, 42 *N. J. Super.* 52 (*App. Div.* 1956). See *Harper v. Vallejo Housing Authority*, 104 *Cal. App.* 2d 621, 232 *P.* 2d 262 (1951); *Muses v. Housing Authority*, 83 *Cal. App.* 2d 489, 189 *P.* 2d 305 (1948).

In *Greene v. Chelsea Borough Council, supra,* the defendant had requisitioned certain premises and had permitted the plaintiff's family to occupy a portion thereof. The plaintiff claimed damages for injuries suffered as the result of the alleged negligence of the defendant in failing to make proper repairs. The court held that although strictly no tenancy had been created the defendant owed a duty of reasonable care which it had not discharged; in the course of his opinion Lord Justice Denning made these remarks at *p.* 138:

"The duty of the defendants here arose not out of contract, but because they, as the requisitioning authority, were in law in possession of the house, and were in practice responsible for the repairs. This practical responsibility meant that they had control of the house for the purpose of repairs; and this control imposed upon them a duty to every person lawfully on the premises to take reasonable care to prevent damage through want of repair. What is reasonable care depends on all the circumstances of the case. This is borne out by the decision of this court in *Hawkins v. Coulsdon and Purley Urban District Council.*"

In the light of all of the foregoing we are satisfied that the evidence at the close of plaintiff's case was sufficient to support a finding that the defendant owed a duty of reasonable care to the plaintiff which it did not discharge.

Although it was far from conclusive the testimony indicating that it had stopped snowing by 11 P. M., that the snow and ice had not been cleared by 8 A. M. of the following morning, and that the construction of the stairs was materially substandard, was sufficient to withstand the defendant's motion for dismissal. See *Visaggi v. Frank's Bar and Grill, Inc.*, 4 *N. J.* 93 (1950) ; *Brody v. Albert Lifson & Sons*, 17 *N. J.* 383 (1955). We find no merit to the defendant's contention that the plaintiff was guilty of contributory negligence as a matter of law; that issue is ordinarily left to the jury and the record contains nothing to suggest a different course in the instant matter. See *White v. Ellison Realty Corp., supra; Hahner v. Bender, supra; Pona v. Boulevard Arena*, 35 *N. J. Super.* 148 (*App. Div.* 1955), certification denied, 19 *N. J.* 326 (1955) ; *Scheirek v. Izsa*, 26 *N. J. Super.* 68 (*App. Div.* 1953).

▮▮ The remaining point raised by the defendant is that it is a State instrumentality and has an immunity from suit which the Legislature has not waived. It has not advanced the contention that if there has been a waiver its responsibility should nevertheless be confined within the limited concepts of municipal liability which, though they are under constant attack and are steadily being whittled away (*Prosser, supra*, 774), are still asserted generally in actions against the traditional governmental subdivisions such as cities and counties; since this matter has not been presented and argued we shall not deal with it. See *Higgins v. Krogman*, 142 *N. J. Eq.* 691 (*E. & A.* 1948). *Cf. Casale v. Housing Authority of City of Newark, supra.* See *Kress v. City of Newark*, 8 *N. J.* 562 (1952) ; *Cloyes v. Delaware Tp.*, 41 *N. J. Super.* 27 (*App. Div.* 1956). But *cf. Herman v. Home Owners' Loan Corp., supra; Hedges v. Housing Authority of Atlantic City, supra.* See *R. S.* 40 :18–3; *R. S.* 40 :43–1. The doctrine that the State may not be sued in our courts without its consent is firmly established in our jurisprudence. See *Gallena v. Scott*, 11 *N. J.* 231 (1953) ; *Strobel Steel Construction Co. v. State Highway Comm.*, 120 *N. J. L.* 298 (*E. & A.* 1938) ; *Miller v. Port of New*

*York Authority,* 18 *N. J. Misc.* 601 (*Sup. Ct.* 1939). *Cf. Duke Power Co. v. Patten,* 20 *N. J.* 42, 50 (1955). It is applicable not only to suits against the State itself but also to suits against State agencies. See *Strobel Steel Construction Co. v. State Highway Comm., supra; Miller v. Port of New York Authority, supra.* And we shall assume that in the absence of anything expressed or implied to the contrary in the governing statute the defendant would be entitled to the State's immunity from suit.

The New Jersey Highway Authority Act (*N. J. S. A.* 27:12*B*–1 *et seq.*) contains no language which speaks in terms of the immunity or its waiver but it does contain ample evidence of the legislative intent that the Authority shall be suable at least to some extent. Thus there is an express provision that the Authority shall have power "to sue and be sued in its own name"; and on many occasions the Authority has in fact sued and been sued. See *e. g., Behnke v. New Jersey Highway Authority,* 13 *N. J.* 14 (1953); *Town of Bloomfield v. New Jersey Highway Authority,* 18 *N. J.* 237 (1955); *New Jersey Highway Authority v. Renner,* 18 *N. J.* 485 (1955). And there are express provisions that the Authority shall have power to issue bonds and notes, to pledge its revenues and execute covenants in connection therewith and to mortgage real property; the Authority does not suggest that it would not be suable on instruments duly executed under these powers. *Cf. Lowes v. Pennsylvania Turnpike Commission,* 125 *F. Supp.* 681 (*D. C. M. D. Pa.* 1954). It does, however, place great reliance on *Sussex County, Board of Chosen Freeholders of, v. Strader,* 18 *N. J. L.* 108 (*Sup. Ct.* 1840), and *Stephens v. Com'rs of Palisades Inter. Park,* 93 *N. J. L.* 500 (*E. & A.* 1919), which should be considered along with the other pertinent decisions in our courts and elsewhere.

In the *Strader* case the plaintiff suffered loss when his team of horses ran off the abutment of a public bridge which had no side railings; the court held that the county board of freeholders was under no common law responsibility to the plaintiff for negligence in the maintenance of the public

highways and that this was not changed by the statutory provision empowering the board to sue and be sued. In his concurring opinion Chief Justice Hornblower stressed the fact that improper maintenance of the highways constituted neglect of a public duty for which no private remedy was available and pointed to the "abundant crop" of litigation which would result if the rule were otherwise. See 18 *N. J. L.,* at *page* 121. In the *Stephens* case the plaintiff's intestate suffered fatal injuries by reason of the defective condition of a pathway in the Palisades Interstate Park; in holding that the plaintiff could not maintain his negligence action, the court held that the situation presented was within the *Strader* case.

When dealing with cases other than actions charging negligence in the maintenance of the public highways our courts have indicated that a statutory provision empowering an independent Authority of the State to sue and be sued will be construed as a waiver of the State's immunity. Thus in *Strobel Steel Construction Co. v. State Highway Comm., supra,* the Court of Errors and Appeals, while sustaining the State's immunity in contract actions against the State Highway Commission, had this to say:

"If the legislature had intended that the Highway commission, or Commissioner, might be sued, it could have said so in plain and explicit language as it did when creating other commissions—such as the Commissioners of Palisades Park, 2 *Rev. Stat.* 1937, 32 :14-2; Delaware River Joint Commission, *Idem.,* 32:3-5; Delaware River Joint Toll Bridge Commission, *Idem.,* 32:8-3; South Jersey Port District, 1 *Rev. Stat.* 1937, 12 :11-2; Port Raritan District, *Idem.,* 12 :12-2; High Point Park, *Idem.,* 13 :5-2 in all of which legislation, after stating that the board or commission was created a body politic, the words 'with power to sue and be sued,' or their equivalent, are found."

In *Karp v. High Point Park Commission,* 131 *N. J. Eq.* 249 (*Ch.* 1942), affirmed 132 *N. J. Eq.* 351 (*E. & A.* 1942), the court upheld the plaintiff's right to bring an action to quiet title against the High Point Park Commission. Vice-Chancellor Bigelow's opinion, which was unanimously adopted by the Court of Errors and Appeals as its own, had this to

say as to the effect of a statutory provision empowering the Commission to sue and be sued:

"Our statute, *R. S.* 13:5–2, enacts that the Board of Commissioners of High Point Park and its successors shall be a body politic with power to sue and be sued. The defendant argues that these words only confer a power on the Commissioners and mean that the Commissioners may be sued in those cases in which the Legislature, by some other enactment, consents that the defendant be sued. I do not so construe them. The section constitutes a consent by the legislature to suit against the Commission. In the *Strobel Case* cited above, it is clear that the court was of the opinion that the words 'with power to sue and be sued' have this result. To the same effect are *Ward v. Board of Regents of Kansas, &c., College, 8 Cir.,* 138 *F.* 372, 70 *C. C. A.* 512; *Packard Co. v. Commissioners of Palisades Interstate Park, D. C.,* 240 *F.* 543; *Utah Const. Co. v. State Highway Commission, D. C.,* 16 *F.* 2d 322; *Board of Trustees, etc. v. Bruner,* 175 *Ill.* 307, 51 *N. E.* 687, and *Butterfield v. State Industrial Accident Commission,* 111 *Or.* 149, 223 *P.* 941; 111 *Or.* 149, 226 *P.* 216. The defendant relies on *Stephens v. Commissioners of Palisades Interstate Park,* 93 *N. J. L.* 500. But there, the judgment for defendant went on the ground that no cause of action in favor of an individual arose from the negligence of a public agency in the discharge of a public duty. Though the statute creating the public agency, which was the defendant in that suit, expressly authorized suit against the agency, the court held that this did not create a liability in favor of the plaintiff."

In *Herman v. Home Owners' Loan Corp., supra,* the plaintiff was injured while descending the steps of a common stairway of a house which the defendant Home Owners' Loan Corporation had acquired through foreclosure. The court, in an opinion by Justice Parker, held that the defendant owed the duty of ordinary care to the plaintiff and was not immune to suit; it found an implicit congressional intent that the defendant "be accountable for such liability as would attach to a private mortgage loan corporation managing real estate acquired by foreclosure of a mortgage to it." See *Prato v. Home Owners' Loan Corporation,* 106 *F. 2d* 128 (1 *Cir.* 1939). The United States Supreme Court has repeatedly found independent governmental corporations and Authorities to be subject to suit in tort as well as contract actions. See *Keifer & Keifer v. Reconstruction Finance Corp.,* 306 *U. S.* 381, 59 *S. Ct.* 516, 83 *L. Ed.* 784 (1939);

*Federal Housing Administration v. Burr,* 309 *U. S.* 242, 60 *S. Ct.* 488, 84 *L. Ed.* 724 (1940) ; *Reconstruction Finance Corp. v. J. G. Menihan Corp.,* 312 *U. S.* 81, 61 *S. Ct.* 485, 85 *L. Ed.* 595 (1941). These decisions persuasively point out that the doctrine of governmental immunity from suit is currently in disfavor; that waivers by Congress in cases involving independent federal instrumentalities should be liberally construed; and that express or implied authority to sue and be sued should generally be considered as sufficient to enable suits in tort as well as contract. *Cf. Davis, "Tort Liability of Governmental Units,"* 40 *Minn. L. Rev.* 751 (1956) ; *Governmental Tort Liability Symposium,* 29 *N. Y. U. L. Rev.* 1321 (1954). It is not without significance that the cited opinions of the United States Supreme Court were handed down before the enactment of the legislation which created the New Jersey Highway Authority, authorized it to construct the Garden State Parkway and empowered it to sue and be sued. See *Town of Bloomfield v. New Jersey Highway Authority, supra,* 18 *N. J.,* at *page* 242. *Cf. Davis, Administrative Law,* 797, 800 (1951) ; *Note, "Limitations on the Doctrine of Governmental Immunity from Suit,"* 41 *Colum. L. Rev.* 1236 (1941).

The hostility towards the doctrine of governmental immunity is also evidenced in the states and it seems to us that pertinent statutory waivers should fairly receive as liberal construction in the states as in the federal sphere. In recent years there has been a noticeable tendency of legislative bodies to entrust to independent Authorities, functions which necessitate relationships comparable to those ordinarily existent between private parties. It would seem that in all justice such Authorities should generally not be afforded the highly special immunities of the State acting in its sovereign capacity; that much has been recognized by the New Jersey Highway Authority Act, particularly in its broad terminology which unrestrictedly permits the Authority to sue and be sued in its own name. *Cf.* Cardozo, J. in *Anderson v. John L. Hayes Constr. Co.,* 243 *N. Y.* 140, 147, 153 *N. E.* 28, 29 (1926) :

"The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced."

 The Authority calls our attention to *Muszynski v. New Jersey Turnpike Authority, 27 N. J. Super. 248 (App. Div. 1953)*, where the plaintiff filed a complaint for damages to her property arising out of the taking of her lands by the New Jersey Turnpike Authority. There the Appellate Division's actual holding was that she was not entitled to sue for damages "separate and apart from those she would take by the condemnation process." That result might well be consonant with the legislative intent to be gathered from the statutory provisions relating to eminent domain proceedings by the Turnpike Authority; if so, there would be no occasion for recourse to the immunity doctrine. Similarly there is no need in the instant matter to consider whether there was any legislative intent to waive the defendant's immunity against claims alleging the negligent maintenance of the public highway in disregard of its public duty; we shall assume, for present purposes, that within the doctrine of the *Strader* and *Stephens* cases that immunity continues. We are satisfied, however, that in the light of the pertinent decisions in the United States Supreme Court and the opinions of our court of last resort in the *Strobel* and *Karp* cases, the Authority's immunity is justly to be deemed waived at least with respect to other types of claims such as the alleged breach of private duty being asserted by the plaintiff in the case before us.

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING and JACOBS—4.

*For affirmance*—Justice HEHER—1.