67 N.J. Super. 271 (1961)
170 A.2d 523
THE BOROUGH OF SAYREVILLE, A MUNICIPAL CORPORATION, AND BOARD OF CHOSEN FREEHOLDERS OF MIDDLESEX COUNTY, A MUNICIPAL CORPORATION, CO-PLAINTIFFS,
v.
NEW JERSEY HIGHWAY AUTHORITY, A BODY POLITIC AND CORPORATE UNDER THE STATUTES OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 24, 1961.
Mr. Joseph T. Karcher, attorney for plaintiff Borough of Sayreville.
Mr. Warren W. Wilentz, County Counsel (Mr. Morris Brown, appearing), attorney for plaintiff County of Middlesex.
*272 Messrs. Schneider, Lustbader & Morgan (Mr. John J. Ronca, appearing), attorneys for defendant New Jersey Highway Authority.
GIULIANO, J.S.C.
This matter came on for hearing on March 17, 1961, and is a motion for summary judgment by the defendant, the New Jersey Highway Authority, on the ground that it is the alter ego of the State of New Jersey and consequently is shielded from liability by the immunity of the sovereign. The plaintiffs, the Borough of Sayreville and the Board of Chosen Freeholders of Middlesex County, urge that the sovereign has consented to suit by unequivocal language embodied in the legislation which created the New Jersey Highway Authority. The plaintiffs allude to the power "To sue and be sued in its own name" which was accorded the Authority in N.J.S.A. 27:12B-5(d).
In their complaint the plaintiffs assert that the defendant damaged municipal and county roads by the improper construction and maintenance of a section of the sewerage system on the Garden State Parkway. The plaintiffs allege that the defendant perpetrated an active wrong through faulty construction and maintenance of the sewerage system section, causing waters to flow on and about their public roads and resulting in loss occasioned by the cost of repair and corrective measures. For the purpose of the motion, the defendant admits the active wrongdoing alleged by the plaintiffs.
After a careful consideration of the briefs, oral argument of counsel, and the pertinent authorities, this court must deny the defendant's motion for summary judgment. This holding is based entirely on the consent to suit set forth in N.J.S.A. 27:12B-5(d). Although there is no case which has decided the precise issue presented in the instant matter, there is authority which this court feels is both germane and impelling.
The defendant contends that the language which empowers it to sue and be sued does not constitute a waiver of the *273 sovereign immunity of the State of New Jersey which immunizes the defendant from liability in the instant civil action because of its status as a state instrumentality. The authorities relied upon are the cases of Sussex County Board of Chosen Freeholders v. Strader, 18 N.J.L. 108 (Sup. Ct. 1840), and Stephens v. Com'rs of Palisades Interstate Park, 93 N.J.L. 500 (E. & A. 1919). It is contended that those decisions establish that the power to sue or be sued exposes the Authority to law suits but does not affect the liability of the Authority. The defendant urges that the liability of the Authority is to be determined by the common law principles of tort.
The legislative intent in providing for the power to sue and be sued as set forth in N.J.S.A. 27:12B-5(d) was examined by the Supreme Court in Taylor v. New Jersey Highway Authority, 22 N.J. 454 (1956). Although the instant question was not decided in Taylor, the court's discussion of the subject is pertinent here. Two cases cited and analyzed in Taylor support the argument that, by providing the power to sue the Authority, the State waived its immunity.
In Strobel Steel Construction Co. v. State Highway Comm., 120 N.J.L. 298 (1938), the Court of Errors and Appeals expressed the opinion that such a clause amounted to a waiver of sovereign immunity. That decision upheld the sovereign immunity of the State Highway Commission where there was no power to sue clause and by contrast said:
"If the legislature had intended that the highway commission, or commissioner, might be sued it could have said so in plain and explicit language as it did when creating other commissions  such as the Commissioners of Palisades Park (Rev. Stat., 32:14-2); Delaware River Joint Commission (Idem., 32:3-5); Delaware River Joint Toll Bridge Commission (Idem., 32:8-3); South Jersey Port District (Rev. Stat., 12:11-2); Port Raritan District (Idem., 12:12-2); High Point Park (Idem., 13:5-2), in all of which legislation, after stating that the board or commission was created a body politic, the words `with power to sue and be sued,' or their equivalent, are found." (at p. 303)
*274 In Karp v. High Point Park Commission, 131 N.J. Eq. 249 (Ch. 1942), affirmed 132 N.J. Eq. 351 (E. & A. 1942), the defendant's contention was similar to that made by the defendant in the instant case. However, the court there held that the Commission could be proceeded against in a suit to quiet title. The court expressed its decision as follows:
"Our statute, R.S. 13:5-2, enacts that the Board of Commissioners of High Point Park and its successors shall be a body politic with power to sue and be sued. The defendant argues that these words only confer a power on the Commissioners and mean that the Commissioners may be sued in those cases in which the legislature, by some other enactment, consents that the defendant be sued. I do not so construe them. The section constitutes a consent by the legislature to suit against the Commission. In the Strobel case * * * cited above, it is clear that the court was of the opinion that the words `with power to sue and be sued' have this result. To the same effect are Ward v. Board of Regents [of] Kansas, etc., College, 8 Cir., 138 F. 372, 70 C.C.A. 512; Packard Co. v. Commissioners of Palisades Interstate Park, D.C., 240 F. 543; Utah Const. Co. v. State Highway Commission, D.C., 16 F.2d 322; Board of Trustees v. Bruner, 175 Ill. 307, 51 N.E. 687, and Butterfield v. State Industrial Accident Commission, 111 Or. 149, 223 P. 941, 226 P. 216. The defendant relies on Stephens v. Commissioners of Palisades Interstate Park, 93 N.J.L. 500. But there, the judgment for defendant went on the ground that no cause of action in favor of an individual arose from the negligence of a public agency in the discharge of a public duty. Though the statute creating the public agency, which was the defendant in that suit, expressly authorized suit against the agency, the court held that this did not create a liability in favor of the plaintiff." (131 N.J. Eq., at pp. 250-251)
In the Taylor case the Authority was held liable on the theory that Strobel and Karp establish that sovereign immunity is waived on claims which allege breach of a private duty. The court assumed for its purposes that the Authority's immunity from claims alleging the negligent maintenance of a public highway in dereliction of a public duty was still extant in accordance with the Strader and Stephens cases. The court classified the duty in the Taylor case as a private duty. The circumstances there were that a guest *275 of a tenant of property condemned by the Authority was injured on the property after the Authority, as titleholder, had filed its declaration of taking and moved to dispossess the tenant. The duty in the instant case appears to be a public one dissimilar to the duty alleged in the Strader and Stephens cases in that the plaintiffs here allege an active wrongdoing, whereas the Strader and Stephens cases were decided on allegations of failure to act.
An examination of our contemporary social and economic philosophy will aid in ascertaining what the Legislature must have intended when it enacted the power to sue clause. The municipal and charitable immunity cases which gauge the current standing of the traditional immunity doctrines are informative for that purpose. The general concepts explored in those learned opinions are equally applicable to the sovereign immunity doctrine, and in this court's view the language used by our Supreme Court provides insight into the historical perspective applicable for the determination of legislative intent in this case.
In Cloyes v. Delaware Tp., 23 N.J. 324 (1957), the court held that the operation of a sewerage disposal plant by a municipality constituted a proprietary function rather than a governmental function. That court's observations on the evolution of social thought and economic fact are generally relevant to what the Legislature must have intended by the broad power expressly conferred upon the Authority. The court said:
"At a time when municipal activities were few and the capacity of municipalities to respond in damages was uncertain, the doctrine of the Strader case undoubtedly seemed to be the common sense answer to the problem. But when municipalities and other governmental agencies expanded into new areas, either replacing private entrepreneurs or meeting new needs which theretofore had not required public activity, additional factors had to be weighed. The expansion of the area of operations enlarged the area of hurt. The number of private injuries which would go without remedy necessarily increased. The experience of private operators who performed subject to the ordinary principles of tort liability had demonstrated that such operations could absorb the impact of liability for negligence without *276 curtailing or imperiling the service, and hence the fear of a crushing impact upon public funds which played a role in Strader was allayed. Indeed, it has been argued that a municipality can more readily absorb the loss than can private industry. Davis, op. cit. supra (40 Minn. L. Rev., at p. 811). The advent of liability insurance increased confidence in the ability of local government to carry on without special immunity. And, lastly, concepts of fair play and justice changed. The notion that a remedy by indictment could satisfy the public interest became archaic. It could not be adjusted to new thinking, the view that society is better served by absorbing the misfortunes negligently inflicted upon individuals rather than by leaving them to their own inadequate devices for the supposed benefit of the entire community." (23 N.J., at p. 328)
This declaration of a modern conception of justice, of independence from antiquated principles of law, pronounced in 1957, five years after the enactment of the subsection presently under consideration, expresses the policy underlying the decisions which slowly curtailed the effect of the municipal immunity doctrine under the guise of proprietary function or findings of active wrongdoing where governmental functions were involved. See Allas v. Borough of Rumson, 115 N.J.L. 593 (E. & A. 1935); Milstrey v. City of Hackensack, 6 N.J. 400 (1951); Kress v. City of Newark, 8 N.J. 562 (1952); Kelley v. Curtiss, 29 N.J. Super. 291 (App. Div. 1954), reversed on other grounds 16 N.J. 265 (1954); Kidde Manufacturing Co. v. Town of Bloomfield, 20 N.J. 52, 61 (1955); Cloyes v. Delaware Tp., supra. In McAndrew v. Mularchuk, 33 N.J. 172 (1960), the Supreme Court limited municipal immunity further by overruling the doctrine that the municipal agent who acted must be in a position of general authority in the municipal government before there can be a finding of active wrongdoing. The court decided that henceforth a municipality would be responsible for the active wrongdoing of its agents on general respondeat superior principles.
The charitable immunity doctrine was repudiated by the Supreme Court in 1958 in Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958). (The Legislature partially resuscitated that doctrine. See N.J.S. 2A:53A-7 to *277 2A:53A-11). The court emphasized many considerations alluded to in the Cloyes case. There was particular emphasis on liability insurance and its role in policy decisions dealing with traditional immunity. The court said:
"It may perhaps be that when D'Amato [D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61 (E. & A. 1925)] was rendered in 1925 it accurately represented the then prevailing notions of public policy. But times and circumstances have changed and we do not believe that it faithfully represents current notions of rightness and fairness. Due care is to be expected of all, and when an organization's negligent conduct injures another there should, in all justice and equity, be a basis for recovery without regard to whether the defendant is a private charity. We are satisfied that the views recently expressed in the concurring and dissenting opinions in Lokar v. Church of the Sacred Heart, supra [24 N.J. 549 (1957)], and in Rafferzeder v. Raleigh, etc., Memorial Hospital, supra [33 N.J. Super. 19 (App. Div. 1954)], are much closer to the mores and ethical ideals of our times than are those which underlay D'Amato several decades ago. In Lokar Justice Wachenfeld noted that experiences in other jurisdictions had demonstrated that no calamitous social effects would result from dissolution of the charitable immunity; that the availability of insurance had obviated any threat that recoveries against charities would seriously deplete their funds and deprive communities of their benefits; and that individuals `should not be forced to suffer the unmitigated and oftentimes crushing burden of injuries wrongfully inflicted merely to continue a judicially inspired immunity long since outdated by the impact of modern times.' * * * Similarly in Rafferzeder, Judge Jayne pointed to the harshness and injustice of the immunity rule and questioned any present need for it in view of the widespread availability of insurance. It may be noted that charitable institutions in New Jersey have long been under some tort responsibilities for negligent injuries to others (see Simmons, Kolb, Rose and Lindroth, supra [Simmons v. Wiley M.E. Church, 112 N.J.L. 129 (E. & A. 1934); Kolb v. Monmouth Memorial Hospital, 116 N.J.L. 118 (E. & A. 1936); Rose v. Raleigh Fitkin-Paul Morgan, etc., Foundation, 136 N.J.L. 553 (E. & A. 1948); Lindroth v. Christ Hospital, 21 N.J. 588 (1956)]) and presumably have protected themselves by adequate insurance coverage; if the enlargement of their tort responsibilities actually results in additional premiums, that should be considered as but incidental to the rendering of equal justice to all innocent parties who are injured through the negligence of others. * * *" (27 N.J., at pp. 39-40)
The Taylor case, supra, supplies further enlightenment in the construction of the power to sue clause. In its analysis *278 of various decisions the Supreme Court discussed the United States Supreme Court holdings which find a waiver of sovereign immunity where Congress has given a federal agency the power to sue and be sued. In citing those cases and commenting on the similar position adopted in sister states, the court said:
"* * * These decisions persuasively point out that the doctrine of governmental immunity from suit is currently in disfavor; that waivers by Congress in cases involving independent federal instrumentalities should be liberally construed; and that express or implied authority to sue and be sued should generally be considered as sufficient to enable suits in tort as well as contract. Cf. Davis, `Tort Liability of Governmental Units,' 40 Minn. L. Rev. 751 (1956); `Governmental Tort Liability Symposium,' 29 N.Y.U.L. Rev. 1321 (1954). It is not without significance that the cited opinions of the United States Supreme Court were handed down before the enactment of the legislation which created the New Jersey Highway Authority, authorized it to construct the Garden State Parkway and empowered it to sue and be sued. See Town of Bloomfield v. New Jersey Highway Authority, supra, 18 N.J. [237], at page 242. Cf. Davis, Administrative Law, 797, 800 (1951); Note, `Limitations on the Doctrine of Governmental Immunity from Suit,' 41 Colum. L. Rev. 1236 (1941).
The hostility towards the doctrine of governmental immunity is also evidenced in the states and it seems to us that pertinent statutory waivers should fairly receive as liberal construction in the states as in the federal sphere. In recent years there has been a noticeable tendency of legislative bodies to entrust to independent Authorities, functions which necessitate relationships comparable to those ordinarily existent between private parties. It would seem that in all justice such Authorities should generally not be afforded the highly special immunities of the State acting in its sovereign capacity; that much has been recognized by the New Jersey Highway Authority Act, particularly in its broad terminology which unrestrictedly permits the Authority to sue and be sued in its own name. Cf. Cardozo, J. in Anderson v. John L. Hayes Const. Co., 243 N.Y. 140, 147, 153 N.E. 28, 29 (1926):
`The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced.'" (22 N.J., at pp. 470-471)
The social and economic policies that demanded limitation of the municipal immunity doctrine and renunciation *279 of the charitable immunity doctrine reflect considerations common to a discussion of the sovereign immunity doctrine. The State functions in a much broader field of endeavor today than it did in 1919 when the Stephens case was decided in reliance on the Strader decision rendered in 1840. The ambit of state activity today occasions far greater likelihood of harm to innocent third parties than state activity did in 1919, and to compare the state functions of today with those of 1840 would be ridiculous. It is clear that any conception of essential justice founded upon ideas of fair play and right which appertains to an evaluation of the soundness of the doctrines of municipal immunity and charitable immunity is present with equal force in an analysis of the doctrine of sovereign immunity. Further, the vast coverage provided by liability insurance has made a phantom of the fear engendered by the argument that the coffers of the state treasury would be depleted by a deluge of plaintiffs' claims.
This court will not presume to limit the effect of the broad language employed by our Legislature in N.J.S.A. 27:12B-5(d). In view of the current philosophy which contemplates governmental and other traditional immunities with disfavor, the Legislature no doubt intended a waiver of the immunity of the Authority.
The motion of the New Jersey Highway Authority for summary judgment is denied.
An appropriate order may be submitted.