89 N.J. Super. 7 (1965)
213 A.2d 251
DOMINIC S. AMANTIA ET AL., PETITIONERS,
v.
JAMES F. CANTWELL, AS REQUEST OFFICER FOR THE DEPARTMENT OF DEFENSE, AND JOHN A. KERVICK, TREASURER, OF THE STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued August 9, 1965.
Decided August 9, 1965.
*9 Before Judges MINTZ, PASHMAN and MATTHEWS.
Mr. George Warren argued the cause for petitioners (Mr. William L. Boyan, on the brief).
Mr. Donald M. Altman argued the cause for respondents (Mr. Arthur J. Sills, Attorney General, attorney).
PER CURIAM.
Petitioners, full-time employees in the New Jersey Department of Defense, who are required to be members of the New Jersey National Guard as a condition of their employment, seek a declaratory judgment that they are entitled to differential pay pursuant to N.J.S.A. 38:12-4 and 5 as amended by L. 1953, c. 82 (now N.J.S. 38A:4-4 and 5). They also seek relief in the nature of mandamus to compel respondents to request an appropriation for this purpose.
This petition is brought on behalf of 200 men employed in the Department of Defense. They serve as technicians, keeping ready the equipment and facilities of the New Jersey National Guard units to which they belong. They seek payment of the difference between their salaries in their civilian status as technicians and the salaries they received when they were called with their National Guard units to active military duty in the Berlin Crisis of 1961-1962.
It is contended that petitioners have a substantive right to differential pay and that respondents, the Request Officer of the New Jersey Department of Defense and the State Treasurer, have statutory duties in the budget-making process to make provision for this payment.
The authority over the Army and Air National Guard organizations of the states is reserved to the states by the Federal Constitution, except when called into federal service "to execute the Laws of the Union, suppress Insurrections *10 and repel Invasions." Art. I, Sec. VIII, Cls. 15, 16; 10 U.S.C. §§ 3079, 3495, 8079, 8495; 32 U.S.C. § 101(4). Since 1916 the Federal Government has undertaken an intensive program of aid to the National Guard organizations. National Defense Act of 1916 (39 Stat. 166 et seq.). The United States provides equipment, including vehicles, to the National Guard. 32 U.S.C. § 702(a). Title is retained by the United States, but the states are responsible for care of the equipment and may be required to pay for its negligent loss or damage. 32 U.S.C. § 702(d), § 710(a), (c). A federal statute authorizes the use of funds appropriated to subsidize the National Guard "for the compensation of competent persons to care for material, armament, and equipment" of the National Guard. 32 U.S.C. § 709(a). The statute and regulations require that technicians must be members of the National Guard unit concerned with the equipment, with a few exceptions not here relevant. 32 U.S.C. § 709(b).
The technician program is administered by state officers, and its personnel are appointed, promoted and discharged by state officers. There is a maximum contribution that the United States will make for the salaries of technicians, but the state may pay less or pay more out of its own funds. Betar and Finkelstein, "The National Guard Claims Act," 24 Fed. B.J. 197, 202 (1964). The Controller-General of the United States in a formal decision in 1941 ruled that the technicians are employees of the state and not of the Federal Government, and consequently are not entitled to federal civil service retirement benefits. Technicians have also been denied protection against discharge under federal civil service laws. Anselmo v. Ailes, 235 F. Supp. 203 (E.D.N.Y. 1964), appeal pending. In 1947 technicians in New Jersey were ruled eligible to join the State Employees Retirement System. (They have been treated as eligible for membership in the successor to S.E.R.S., the Public Employees Retirement System. Most of petitioners were members of P.E.R.S. during the period for which they seek differential pay in this litigation. *11 While petitioners were in federal service in 1961-1962, they were placed on a leave status by the Department of Defense. They were given credit toward retirement for such service by P.E.R.S., and the State paid their pension contributions during such service.) Many states include technicians in their retirement systems. Betar and Finkelstein, op. cit., at p. 203. Recently the United States Supreme Court held that technicians are state employees when their unit is not in active federal service, and declined to hold the United States liable for their negligence, pursuant to the Federal Tort Claims Act. Maryland for Use of Levin v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).
N.J.S.A. 38:12-4 and 5, since before World War II, provided for payment by New Jersey of "differential pay," i.e., the difference between civilian and military pay, for state employees who were members of National Guard units when called into active federal service. During World War II, payment of benefits under these statutes was made to technicians. During the Korean War, however, the Treasury Department raised the question as to the propriety of payments to technicians on the ground that they were not state employees within the meaning of N.J.S.A. 38:12-4 and 5, citing the payment of their salaries through federal aid. This would have frustrated the expectation of the technicians who relied on the World War II precedent. In order to make clear that technicians were entitled to differential pay, an amendment to N.J.S.A. 38:12-5 was added by L. 1953, c. 82. Subsequently, the technicians called into federal service during the Korean War received differential pay.
In 1961 a number of New Jersey technicians were again called into federal service during the crisis which threatened a second blockade of Berlin. The technicians remained on active duty for about 11 months. Despite the precedents established in World War II and the Korean War, and despite the passage of L. 1953, c. 82, the respondents have not taken the budgetary steps required to obtain payment of differential pay to the technicians.
*12 The first question before the court is whether N.J.S.A. 38:12-4 and 5 grant to petitioners the substantive right to differential pay. The statutes in question are clear and unambiguous. They provide:
38:12-4. "All officers and employees of this state or of any county or of any municipality in the state or of any board or commission of the state or of any county or municipality who are members of the national guard, naval militia or New Jersey guard shall be entitled to leave of absence from their respective duties without loss of pay or time on all days during which they shall be engaged in field training or other duty ordered by the governor.
Leave of absence for military or naval duty shall be in addition to the regular vacation allowed to such employees by the state, county or municipal law, ordinance, resolution, or regulation."
38:12-5. "During the absence of any such officer or other employee, mentioned in section 38:12-4 of this Title, on active service with the Army or Navy of the United States or any other organization affiliated therewith, such person shall receive such portion of his salary or compensation as will equal the loss he may suffer while on such active service.
Any officer, warrant officer or enlisted man in the State Department of Defense, who is a member of the National Guard and who heretofore has been or who shall hereafter be transferred to Federal service, by order of the chief of staff of said State Department of Defense, shall during any period of such transferred service retain all rights and privileges as were accorded to officers, warrant officers and enlisted men in the State Department of Defense transferred to Federal service during World War II, including pay differential and any pension or retirement rights and privileges conferred by the laws of this State."
The legislative history of these statutes, in our judgment, clearly and conclusively establishes that technicians, such as the petitioners, are covered by their provisions. Respondents cannot seriously controvert this conclusion.
In any event, it is clear to us that petitioners are entitled to the pay they seek, and we so hold. What this court cannot do, however, is direct that the money be paid to the petitioners or compel respondents to request an appropriation. The power to appropriate money rests with the Legislature. While we recognize petitioners' moral and legal right to the differential pay they seek, this court cannot secure it for them by *13 way of a directive. We can and do declare that the money is due them. Whether or not petitioners receive the money to which they are clearly entitled rests exclusively with the Legislature.
The case of Gallena v. Scott, 11 N.J. 231 (1953), reaffirmed the long-established principle that the State of New Jersey, its agencies and authorized officials when acting in their official capacities are immune from suit unless there is specific legislation in which the State has consented to be sued. See also Taylor v. N.J. Highway Authority, 22 N.J. 454 (1956); Godfrey v. Essex County Freeholder Bd., 65 N.J. Super. 213 (Law Div. 1961); Bedrock Foundations, Inc. v. George H. Brewster & Son, Inc., 31 N.J. 124 (1959). But an action for a declaration of rights under a statute is not a suit against the State violative of the sovereign immunity doctrine. Abelson's Inc. v. N.J. State Bd. of Optometrists, 5 N.J. 412, 416 (1950).
In Gallena v. Scott, supra, an employee sued the Administrative Director of the Courts and the Director of the Division of Budget and Accounting, Department of the Treasury of the State of New Jersey, for wages allegedly due and owing to him during period of illegal suspension and removal from his position as Chief Clerk in the office of the Clerk in Chancery. He had been removed for cause from such position and subsequently returned to the position after successfully winning a proceeding in lieu of certiorari. He had filed a claim with the Legislative's Appropriations Committee and was awarded a certain sum of money. He refused these moneys as insufficient. Subsequently, he instituted suit against defendants seeking to compel them to pay the remainder of his alleged back wages. The Supreme Court held that defendants were state officials acting in their official capacities and therefore were immune from suit. The court stated:
"This is a proceeding designed to control the action of the State and to subject it to liability within the principle of sovereign immunity from suit, and therefore untenable for want of the sovereign's consent to be sued. Strobel Steel Construction Co. v. State Highway Commission, *14 120 N.J.L. 298 (E. & A. 1938); Strobel Steel Construction Co. v. Sterner, 125 N.J.L. 622 (Sup. Ct. 1941), affirmed 128 N.J.L. 379 (E. & A. 1942), certiorari denied Strobel Steel Construction Co. v. State Highway Commission of New Jersey, 317 U.S. 656, 63 S.Ct. 53, 87 L.Ed. 527 (1942); Abelson's Inc. v. New Jersey State Board of Optometrists, 5 N.J. 412 (1950)." (at p. 235)
The court continued (at p. 237):
"The defendant state officers, in the judicial and executive branches of the government, cannot be called upon to litigate the sufficiency of the claim, as the representatives of the State, and thus to bind the State, for the action would then in essence be one for the recovery of money from the State, and so a suit against the State itself which is not maintainable in the absence of sovereign consent. There is no pretense that the individual defendants are for some reason under a personal liability for the moneys in suit. The State is the substantial party in interest. The action seeks payment of the claim from the State's treasury. The application of the doctrine depends upon the essential nature and effect of the proceeding. Ford Motor Co. v. Department of Treasury of the State of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945).
Immunity from suit without consent, signified by legislative action or waiver, is an attribute of sovereignty. The principle may not be subverted by indirection. The immunity is grounded in the strongest considerations of public policy, related to the security of the government and its administrative integrity. Fitts v. McGhee, 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899). Where the substantial rights of the State would be directly and adversely affected if there were judgment according to the demand made, the State is a necessary party defendant, and if it cannot be made a party, for want of consent to be sued, then the suit is not maintainable. Schwing v. Miles, 367 Ill. 436, 11 N.E.2d 944, 113 A.L.R. 1504 (Sup. Ct. 1937). The question is whether the suit is in reality against the State itself, as a means of controlling its action or imposing a liability."
So also in the case at bar, petitioners seek to compel the Defense Department Request Officer and the State Treasurer to request appropriations (approximately $500,000) for the salary claims of the petitioners. These governmental officials, when acting pursuant to law and without fraud or malice, are immune from suit. Taylor v. N.J. Highway Authority, supra; Valentine v. City of Englewood, 76 N.J.L. 509 (E. & A. 1908). The complaint does not allege fraud or malice.
*15 It is clear that since the State of New Jersey has not specifically consented to be sued in this instance, suit against the State, its authorized agencies or agents, is not maintainable.
In the case at bar the Legislature has declined to appropriate funds to pay petitioners' claim. But this is not determinative of petitioners' substantive right under the statute. In Fraser v. Robin Dee Day Camp, 44 N.J. 480 (1965), Justice Proctor said:
"* * * Assuredly, the mere introduction of a bill some years after the passage of the original enactment can in no way be instructive in determining the intent of the Legislature which enacted the original law. A contention similar to that made by the respondent was rejected in Levitt & Sons, Inc. v. Div. Against Discrimination, etc., supra, 31 N.J., at pp. 525, 527-528." (at p. 486)
Now, as in Gallena, supra, petitioners bring suit to collect. It is submitted that our Supreme Court has already answered petitioners' contention in the following words:
"The cited statute made the only appropriation available for the satisfaction of plaintiff's claim; and, if he considers this but part payment, then his remedy is to renew his demand upon the Legislature itself, either to supplement the appropriation or to consent to a suit to determine the validity of the claim." (11 N.J., at pp. 236-237)
Appropriations bills can and often do originate in the Legislature, absent a request from the Executive Branch. This court should not interfere. The only course available to petitioners was and is the Legislature.
Thus, while petitioners are legally and morally entitled to reimbursement of the differential pay under the statutes, their only remedy is to request legislative action. The relief sought that respondents be compelled to request an appropriation must be denied.