STATE OF NEW JERSEY IN THE INTEREST
OF ANTHONY ANTINI, JR., A JUVENILE.

APPEAL OF FRANCIS J. SIMONE, ASSIGNED COUNSEL.

STATE OF NEW JERSEY IN THE INTEREST
OF ROBERT ANDERSON, A JUVENILE.

APPEAL OF HOWARD SCHWARTZ, ASSIGNED COUNSEL.

Argued February 17, 1969—Decided March 17, 1969.

*Mr. Howard Schwartz* argued the cause *pro se* and for appellant Francis J. Simone (*Messrs. Simone and Schwartz,* attorneys).

*Mr. Dominick A. Mirabelli,* County Counsel, argued the cause for respondent County of Union.

The opinion of the court was delivered by

HALL, J. The appellants in these consolidated appeals are attorneys who were assigned in January 1968 to represent two indigent juveniles charged with delinquency in the Union County Juvenile and Domestic Relations Court. After the completion of their services they applied to the court for an allowance of compensation, to be paid by the County Treasurer. We had previously held that compensation was not to be awarded to assigned counsel in proceedings before the juvenile courts. *State in re Steenback,* 34 *N. J.* 89, 103–104 (1961). Pointing to the requirement of counsel for juveniles laid down by *In re Gault,* 387 *U. S.* 1, 87 *S. Ct.* 1428, 18 *L. Ed. 2d* 527, (1967), appellants' contention was that the later holding of *State v. Rush,* 46 *N. J.* 399 (1966), with respect to county payment of compensation to attorneys assigned to represent indigent adults charged with crime, should be extended to cover those assigned in juvenile causes as well. No question was raised as to the reasonableness of the amounts sought. The court denied the requests, 101 *N. J. Super.* 385 (1968), and the attorneys appealed to the Appellate Division. We certified the matter on our own motion before argument there. *R. R.* 1 :10–1.

In *Rush,* handed down March 7, 1966, we decided that the time had come to relieve the bar of the task of defending, without any compensation except in cases of murder, indigent adults accused of crime, *i. e.,* indictable offenses. This obligation, which included representation on appeals and post-conviction applications, had existed in this state since 1795—more than 150 years before the United States Supreme Court put the indigent's right to counsel on a federal constitutional

basis—and had been distributed among the members of the bar in each county by assignment in alphabetical rotation. See former *R. R.* 1:12–9. We held that compensation, computed at 60% of the fee a client of ordinary means would pay an attorney of modest financial success, should be paid by the county, on order of the trial court, to attorneys assigned in "non-murder" cases after January 1, 1967. We further stated that assigned attorneys were already entitled to receive reimbursement of their out-of-pocket expenses since *State v. Horton,* 34 *N. J.* 518 (1961). The delayed date was fixed in order to give the legislature an opportunity to determine "whether this obligation of the State should be met by the present system of assignment in individual cases, or by a public defender, or some combination of both." 46 *N. J.,* at 415.

The considerations and bases for the *Rush* conclusion are fully set forth in the opinion and need not be repeated here beyond saying that the exercise of our power was dictated by the vastly increased burden of such assignments in recent years, both by reason of the constantly growing number of such cases and the greater amount of time required for each, which had resulted in an unfair portion of a public obligation being placed upon the profession. We had in mind not only the burden of assignments in cases of indictable offenses, but also that of those then made on a selective basis in juvenile causes (see former *R. R.* 6:3–4 and 6:9–1 (*a*) and (*b*)) and in the local criminal courts involving non-indictable offenses (see former *R. R.* 8:3–3 (*b*)). In addition we recognized that members of the bar were also called upon from time to time to represent indigents in civil matters, especially in counties where legal aid organizations had no paid professional staff. (Most of this service has since been assumed by legal services projects established in the various counties by the Office of Economic Opportunity in the state Department of Community Affairs, *N. J. S. A.* 52:27D–1, *et seq.*).

■ The legislature thereafter decided that New Jersey should have a statewide Public Defender system, *N. J. S.* 2A:158A-1, *et seq., L.* 1967, *c.* 43, and appropriated funds to put the system in operation effective July 1, 1967. The statute in section 1 set forth a declaration of state policy:

"It is hereby declared to be the policy of this State to provide for the realization of the constitutional guarantees of counsel in criminal cases for indigent defendants by means of the system and program established and authorized by this act to the end that no innocent person shall be convicted, and that the guilty, when convicted, shall be convicted only after a fair trial according to the due process of the law."

It went on expressly to specify that "[i]t shall be the duty of the Public Defender to provide for the legal representation [through staff attorneys or lawyers engaged by him on a case basis] of any indigent defendant who is formally charged with the commission of an indictable offense" (*N. J. S.* 2A:158A-5), including direct appeals from convictions and post-conviction proceedings. Necessarily also included by implication was representation of such persons in preliminary proceedings in local criminal courts. While the statute did not explicitly include representation with respect to custodial interrogation and identification or the like before a formal charge is actually made, we are of the view that legal services constitutionally required in such situations are fully within the broad declaration of policy and we understand that the Public Defender, quite properly, is furnishing counsel in such situations in the interest of continuity and expedition of representation. It is to be noted, however, that the statute did not provide for the representation of juveniles or persons charged with non-indictable offenses.

We thereafter amended our rule dealing with the assignment of counsel, effective July 1, 1967, to tie in with the Public Defender law with respect to counsel for adults charged with indictable offenses. *R. R.* 1:12-9(*a*) and (*b*).

The upshot was that the precise holding of *Rush,* providing for county compensation of individually assigned counsel, was effective only as to assignments made between January 1, 1967 and July 1, 1967. It may be added that *R. R.* 1 :12–9 (*c*) and (*d*) and 3 :2–3 (*b*), also amended at the same time, provided more specifically for the individual assignment of counsel by the court under the old rotation system for those indigents charged with non-indictable offenses who are "constitutionally or otherwise entitled by law to counsel". The former rule and assignment system was continued as to juvenile causes where the juvenile was charged with causing the death of a person and in other cases where counsel was "necessary for a fair hearing". Former *R. R.* 6 :9–1 (*a*) and (*b*).

In the meantime, on May 15, 1967, the United States Supreme Court decided *In re Gault supra* (387 *U. S.* 1, 87 *S. Ct.* 1428, 18 *L. Ed. 2d* 527). That decision established the constitutional right of the indigent juvenile to be furnished with counsel "in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed" (387 *U. S.,* at 41, 87 *S. Ct.,* at 1451, 18 *L. Ed. 2d,* at 554). Consequently, counsel had to be assigned to juveniles in this state on a very much larger scale than previously. Accordingly, we again amended our rules, effective September 11, 1967, to provide for the assignment of counsel in such cases, but still under the alphabetical rotation system. *R. R.* 6 :3–4 (*c*) and (*d*); 6 :9–1. Appellants' assignments were made pursuant thereto.

The resulting burden on the bar since September 1967 has been a substantial one. This is due not only to the command of *Gault,* but also to a large increase in the number of juvenile complaints. In the 1967–68 court year about 36,000 such complaints were filed compared to approximately 30,000 the proceeding year. About 8,500 cases were pending at the end of the year as against 5,000 at the end of the prior year. The upward trend continues. From September 1, 1968 through January 31, 1969, about 20% more complaints

were filed than during the same period the previous year. 7,600 complaints were pending on the date last mentioned. While we have no exact statewide figures on the number of assignments made, we do know that, during the five month period just referred to, 4,568 complaints were disposed of at formal hearing, which is the case classification under our rules requiring counsel. In Union County, we are told, 514 assignments have been made since September 1967 from a master list of 406 attorneys, and attorneys in that county can expect to be assigned about every nine months.

We believe were such a burden to continue, it would, as in *Rush*, soon become an unreasonable one for· the bar to carry without some compensation. By reason of *Gault* the obligation to furnish counsel to the indigent juvenile in danger of commitment has become a constitutional and a public one. We have no doubt of our power, on the same thesis as set forth in *Rush*, to direct the awarding of fees to such counsel by the juvenile courts and to compel payment by the respective counties.

However, the legislature, cognizant of the situation, has wisely acted to direct the Public Defender to provide for the representation of juveniles formally charged with an act of delinquency "where in the opinion of the juvenile judge the prosecution of the complaint may result in the institutional commitment of such person". *L.* 1968, *c.* 371, approved and effective December 27, 1968. We are advised that the Public Defender will receive a supplemental appropriation for the balance of the fiscal year and has now assumed the obligation of furnishing counsel in all future cases. This burden on the bar has consequently ended, for all practical purposes. In view of that fact we do not consider it unfair that private attorneys have had to shoulder it without compensation for about a year and a half. We therefore will not direct the payment of compensation for such past assignments. But we are of the opinion that lawyers who provided services since the decision in *Gault* was handed down should be reimbursed for any out-of-pocket

expenditures, and the juvenile court judges are authorized to enter orders, after appropriate application, directing payment thereof by the particular county. *Cf. State v. Rush, supra* (46 *N. J.,* at 416).

Finally, it is appropriate to add a word as to the future of the whole subject. As we have said, the obligation to furnish counsel to the indigent adult charged with an indictable offense and to the juvenile offender in danger of commitment is a public one with a constitutional base. The legislature has wisely provided a state system. Representation must be full and competent. Both the public and the accused are entitled to a speedy and fair disposition of such charges. This means, of course — as we believe the legislature fully appreciates — that sufficient money must be provided at the state level to enable the Public Defender to engage sufficient personnel to man all courts expeditiously. If the appropriation made to him proves insufficient in any fiscal year, we shall have to return, for the balance of such year, to the compensation scheme set forth in *Rush* as to both adult and juvenile courts. With regard to assignments in cases of non-indictable offenses in the local criminal courts, there is no demonstration that presently their burden upon the bar is unreasonable or is likely to become so in the near future. If it should, this court is available to act.

The order of the trial court is affirmed. No costs.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.