NEW JERSEY DIVISION OF YOUTH AND FAMILY SER-
VICES, PLAINTIFF, v. SYLVIA LEE WANDELL AND
GEORGE/JORGE BURGOS, DEFENDANT.

Juvenile and Domestic Relations Court
Cumberland County

January 12, 1978.

*Mr. William H. Mild, III,* for plaintiff (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

*Mr. John Morris* for defendant Sylvia Lee Wandell (*Messrs. Horuvilz, Perlow, Ritter & Morris,* attorneys).

KLEINER, J. C. C. The matter before the court presents a question of first impression in this State. The issue raised is whether indigent minors who are the subject of proceedings initiated under *N. J. S. A.* 30:4C–1 *et seq.* are entitled to independent assigned counsel.

This suit was precipitated by actions commenced by the New Jersey Division of Youth and Family Services (DYFS) against Sylvia Lee Wandell and George/Jorge Burgos under *N. J. S. A.* 30:4C–1 *et seq.* The amended complaint filed in this matter seeks a judgment including the following relief:

* \* \* placing Kenneth Cochran and Keith Wandell in the care and supervision of the Division in accordance with *N. J. S. A.* 30:4C–12 [and] terminating the parental rights of Sylvia Lee Wandell and George/Jorge Burgos with respect to Kohanna Wandell and committing Kohanna Wandell to the guardianship of the Division pursuant to *N. J. S. A.* 30:4C–15 and *N. J. S. A.* 30:4C–20 \* \* \*.

Although *N. J. S. A.* 30:4C–12 does not authorize the involuntary removal of children from the custody of their parent, once a judgment giving the Division "care and supervision" is entered, the Division may then institute proceedings pursuant to *N. J. S. A.* 30:4C–15 and *N. J. S. A.* 30:4C–20 to terminate parental rights. A prior order of "care" is a prerequisite to the termination of parental rights where the Division does not have "custody." *Division of Youth and Family Services v. Wunnenburg,* 149 *N. J. Super.* 64 (J. D. R. Ct. 1977).

Particularly important is that the Division, upon the filing of a complaint pursuant to *N. J. S. A.* 30:4C–15 and *N. J. S. A.* 30:4C–20, can obtain an interlocutory order of guardianship at a summary hearing under *N. J. S. A.* 30:4C–17 pending a final hearing of guardianship. Such an interlocutory order will result in the involuntary removal of the child subject of the complaint.

The matter is now before the court on a motion brought by defendant Sylvia Lee Wandell on behalf of her three minor children who are the subject of these proceedings, alleging that their constitutional rights require certain protective measures including the appointment of counsel.

That a natural parent has standing to assert the constitutional rights of her minor children seems firmly established by the case law of both the New Jersey and United States Supreme Courts. See *In Re Quinlan,* 70 *N. J.* 10 (1976); *Eisenstadt v. Baird,* 405 *U. S.* 438, 446, 92 *S. Ct.* 1029, 31 *L. Ed.* 2d 349 (1972), citing *Prince v. Massachusetts,* 321 *U. S.* 158, 64 *S. Ct.* 438, 88 *L. Ed.* 645 (1944).

In *Crist v. N. J. Div. Youth & Family Services,* 128 *N. J. Super.* 402 (Law Div. 1974), aff'd in part 135 *N. J. Super.* 573 (App. Div. 1975), the court, on a similar issue, held that

\* \* \* indigent parents subjected to dependency proceedings looking towards temporary custody or permanent termination of parental rights are entitled to counsel free of charge. [128 *N. J. Super.* at 417]

The court's decision in *Crist* was grounded upon federal due process considerations. Recognizing the sanctity of the family unit, the court stated:

For the state to intrude permanently or only temporarily in a manner designed to disassemble the nuclear family, society's most basic human psychological unit, without affording counsel and guidance to a class of society's least equipped adversaries strikes the court as a fundamental deprivation of procedural due process. [at 415]

The integrity of the family unit has often found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska,* 262 *U. S.* 390, 43 *S. Ct.* 625, 67 *L. Ed.* 1042 (1923), *Stanley v. Illinois,* 405 *U. S.* 645, 92 *S. Ct.* 1208, 31 *L. Ed.* 2d 551 (1972); the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma,* 316 *U. S.* 535, 62 *S. Ct.* 1110, 86 *L. Ed.* 1655 (1942), and

the Ninth Amendment, *Griswold v. Connecticut,* 381 *U. S.* 479, 85 *S. Ct.* 1678, 14 *L. Ed.* 2d 510 (1965).

Our own Supreme Court, in *In re Guardian of Dotson,* 72 *N. J.* 112 (1976), affirmed a trial court ruling respecting the waiver of fees and the providing of indigent parents with a transcript for appeal in a parental rights proceeding, stating:

We focus now on the specific type of proceeding before us. It presents circumstances of an unusual character. While it is denominated a civil matter, it is almost quasi-criminal in nature, since it seeks to terminate for cause all parental ties between the children here involved and their natural parents. * * * As such, it is deserving of special treatment. [at 118]

In his concurring opinion in *Dotson,* Justice Pashman expounded on the *per curiam* :

While I agree that this action is different because it involves "a most sensitive area of basic human relations," I think it is incumbent upon the Court to acknowledge that the "special treatment" afforded to indigent parents is not a product of our grace, but is mandated by the due process and equal protection clauses of the Fourteenth Amendment. [at 120]

In *Crist v. DYFS, supra,* the court relied heavily on *Rodriguez v. Rosenblatt,* 58 *N. J.* 281 (1971). *Rodriguez* extended the right to counsel to nonfelony criminal cases. The *Crist* court placed reliance on the broad statement in *Rodriguez* that

* * * as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or *other consequence of magnitude* with first having had due and fair opportunity to have counsel assigned without cost. [at 295 ; emphasis supplied]

The *Crist* court (128 *N. J. Super* at 416) reasoned that "it is difficult to consider many consequences of greater magnitude than the loss of one's children.

█ We agree. And while this court can think of few consequences of "greater magnitude" we certainly find at least one of equal magnitude, that being the loss of one's parents.

Surely if due process required that a mature adult subjected to these proceedings requires the assistance of able counsel, no less should be required to protect the interests of a minor incapable of speaking for himself.

In addition to the protection afforded by the Due Process Clause of the Fourteenth Amendment of the United States Constitution, the indigent minors subject of these proceedings are entitled to the protection of our own New Jersey Constitution. *N. J. Const.* (1947), Art. I, par. 1 provides:

All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness.

For the reasons set forth above, this court holds that indigent minors who are the subject of termination and dependency proceedings instituted under *N. J. S. A.* 30:4C–1 *et seq.* are entitled to independent legal counsel.

In reaching this conclusion we are influenced by the obvious concern of the Legislature regarding independent legal representation of minors and of their parents or guardians in child abuse and neglect proceedings filed pursuant to *N. J. S. A.* 9:6–8.23 *et seq.* The need for separate counsel reflects the potential for conflict which may arise in representing the very diverse interests of the parties affected by a child abuse-neglect complaint.

A similar potential for conflict may exist between the parties affected in a proceeding which may lead to the termination of parental rights, thus requiring that counsel for the children be independent of counsel for the natural parents.

In accordance with the guidelines set by the Appellate Division in *Crist v. DYFS, supra,* until such time as the Legislature may empower the office of the Public Advocate to assume this type of representation, the Juvenile and Domestic Relations Court will assign counsel from the private bar to serve without compensation. *State v. Rush,* 46 *N. J.* 399, 408 (1965).