165 N.J. Super. 492 (1978)
398 A.2d 611
NEW JERSEY DIVISION OF YOUTH & FAMILY SERVICES, PLAINTIFF,
v.
B.W. AND V.W., DEFENDANTS.
IN THE MATTER OF M.J.W., MINOR.
Superior Court of New Jersey, Juvenile and Domestic Relations Court, Cumberland County.
November 2, 1978.
*493 Ms. Gaby Gross, Deputy Attorney General, Division of Youth and Family Services, for plaintiff (Mr. John J. Degnan, Attorney General, attorney).
Mr. Arnold Robinson, of counsel on behalf of defendants B.W. and V.W. (Messrs. Greenberg and Robinson, attorneys).
*494 KLEINER, J.C.C. (temporarily assigned).
Pursuant to N.J.S.A. 30:4C-12, the Division of Youth and Family Services seeks an order permitting an investigation into the circumstances of defendants' infant child, M.J.W., born October 20, 1978, and directing his parents, B.W. and V.W., to assist and cooperate in the Division's investigation of the welfare of the infant.
The affidavits and testimony reveal that the facts upon which the Division relies are:
1. This court's prior order and decision, entered January 3, 1977, reported at 149 N.J. Super. 64 (J.D.R. Ct. 1977), in which the following findings of fact were made:
From the facts [referred to within this opinion] above and other clear, convincing, and credible testimony offered at trial as well as the court's observations of V.W., I find that the State has clearly established that V.W. is incapable of caring for children.
The testimony is further clear and convincing that B.W. is unlikely and unwilling to change his negative and uncompromising attitude against accepting supportive community services. Without such services it is clear that V.W. could not properly care for one child, let alone three. [Id. at 75.]
2. That a Division caseworker was denied entrance to defendants' residence for an investigation on November 2, 1978.
Except for an affidavit of the caseworker responsible for defendants' case before the 1976 hearing, stating that because of the condition of the older children she was concerned that M.W. may not be receiving adequate care, no other facts implying the need for an investigation are recited in the affidavits or testimony.
N.J.S.A. 30:4C-12 permits the Division to apply for an investigative order where it has previously requested the parents to allow an investigation into the conditions and care of a child, but has been refused. The statute implies a complaint from an outside agency or concerned citizen which the Division has a duty to investigate. There has been no such complaint in this case. Here the Division is on its own motion, seeking to investigate the circumstances of this *495 child. Without addressing the propriety of any governmental agency itself looking for business involving the parent-child relationship, the problem before this court is that, although the statute authorizes this court to order an investigation when it is satisfied that one is necessary, the statute does not define a judicial standard upon which such an order should be based. As such, the question before this court is of first impression.
This case was argued by analogy to administrative search cases in which warrants were required, e.g., Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). Also analogized were cases under the Occupational Safety and Health Act, 29 U.S.C.A. § 657(a). Originally, the cases in Federal District Court held that despite the absence of a warrant requirement in that section, rather than render the act unconstitutional, a warrant requirement should be engrafted onto the statute, e.g., Brennan v. Gibson's Products, Inc. of Plano, 407 F. Supp. 154 (E.D. Tex. 1976); Dunlop v. Hertzler Enterprises Inc., 418 F. Supp. 627 (D.N.M. 1976). However, the Supreme Court held § 657(a) unconstitutional insofar as it authorized inspections without a warrant or its equivalent. Marshall v. Barlow's Inc., 436 U.S. 307, 98 S.Ct. 1816, 1827, 56 L.Ed.2d 305 (1978). The court reasoned in part:
The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search. A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the Constitution * * * Also a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed. [Id. at 323, 98 S.Ct. at 1826, 56 L.Ed.2d 305]
From the cases cited above, the argument before the court addressed the issue of how high a standard of probable cause is necessary; what criteria must the Division present to the *496 court to obtain a warrant or its equivalent, an investigative order?
It is critical at the outset to note that this case does not involve the mere inspection of property or wiring in a house. What is sought to be investigated in this case is the interrelationship of a parent and a child. This relationship by itself is of constitutional magnitude. Stanley v. Illinois, 405 U.S. 645, 651-652, 92 S.Ct. 1208, 1212-1213, 31 L.Ed.2d 551 (1972). Our Supreme Court has noted, with respect to the application for a transcript by an indigent defendant in a D.Y.F.S. guardianship proceeding, that cases involving termination of parental ties are worthy of "special treatment." In re Guardianship of Dotson, 72 N.J. 112, 118 (1976). In the right to counsel setting, our courts hold the relationship to be of constitutional significance. Crist v. N.J. Div. Youth & Family Services, 128 N.J. Super. 402 (Law Div. 1974), aff'd in part 135 N.J. Super. 573 (App. Div. 1975); N.J. Div. Youth & Family Services v. Wandell, 155 N.J. Super. 302 (J.D.R. Ct. 1978). Proceedings under N.J.S.A. 30:4C-12 are the first step in obtaining "care and supervision" of a child which may then lead to termination of parental rights pursuant to N.J.S.A. 30:4C-15 and 20. Wandell, at 303. These proceedings are designated "quasi-criminal", Dotson, supra, involving enormous consequences. Crist, supra, Wandell, 155 N.J. Super. at 305.
It is also clear that the Fourth Amendment of the United States Constitution and Art. I, parag. 7 of the New Jersey Constitution protect these defendants from invasion of their right to privacy within their home. E.g., See v. City of Seattle, supra; Camara, supra.
Balanced against the above is the State's great interest as parens patriae in the welfare of children, as indicated by Title 9 and N.J.S.A. 30:4C-1 et seq. Thus, this court deals, "as is the rule in such cases, with a clash of near absolutes." Brennan v. Gibson's Products, Inc., supra at 157.

*497 In assessing whether the public interest demands creation of a general exception to the warrant requirement, the question is not whether the public interest justifies the type of search in question, but whether the authority to search should be evidenced by a warrant, which in turn depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search. [Camara, supra, 387 U.S. at 533, 87 S.Ct. at 1733, 18 L.Ed.2d at 938]
It must be noted that this case does not involve the question of whether the Division must seek judicial approval before seeking consent to investigate under N.J.S.A. 30:4C-12. This court perceives that the statute implicity provides for the constitutional right to a judicial determination of the propriety of an investigation by requiring the Division to apply for an order in the face of a refusal to permit one. Thus, both the individual's and the Division's interests are protected by N.J.S.A. 30:4C-12. It is the balancing of those interests in the context of this case to which the court now turns.
This case is distinguishable from See, Camara and Marshall, all supra. The inspections in those cases were not personal in nature. Camara, supra, 387 U.S. 537, 87 S.Ct. 1735, 18 L.Ed.2d 940. This is not an area where closely defined or patterned administrative schemes may be drawn as in the three cases just cited. This case involves a most sensitive area of human relations. Dotson, supra, 72 N.J. at 120 (Pashman, J., concurring). For these reasons, and because of the enormity of the personal interests at stake, this court holds that the standard to be applied upon the application of the Division pursuant to N.J.S.A. 30:4C-12 for an investigative order when a request for an investigation has been refused is the standard of probable cause as applied to criminal cases. That standard has been defined in perhaps a classic manner by Dumbra v. United States, 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. 1032.
In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. *498 We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant. [Id. at 441, 45 S.Ct. at 549, 69 L.Ed. at 1036]
The sole fact upon which the Division relies is the judicial finding 22 months prior to the date of this hearing that defendants were incapable of parenting their children. That was a legitimate finding based upon the then known facts. There is not a scintilla of new evidence offered. In cases relating to termination of parental rights, predictions of parenting ability upon very recent facts are necessary. In re Guardianship of B.C.H., 108 N.J. Super. 531, 538 (App. Div. 1970); contra, J. & E. v. M. & F., 157 N.J. Super. 478, 493 (App. Div. 1978). On an application for an investigative order that has the potentiality of resulting in Division "care or supervision," N.J.S.A. 30:4C-12, or which may eventually lead to termination proceedings, conclusions based upon a 22-month-old prediction of future conduct are not enough to support a finding of probable cause to order an investigation. State v. Racanelli, 74 N.J. Super. 420 (Cty. Ct. 1962). That a judge in a prior proceeding makes a prediction upon the then known facts cannot forever after be the basis upon which the Division can intrude upon the private family life of an individual.
There must be, at the time of the application for a further investigation, new facts. The Division is equipped to gather those new facts. Those new facts may not include, perhaps, access to the child or access to the child's medical records, but there are certainly investigative procedures that the Division can employ free of the intrusion into the privacy of the home and the parent-child relationship upon which it can then return to the court and seek the issuance of an investigative order based upon facts which are subject to corroboration *499 at a summary hearing. The mere coming before the court, citing a conclusionary fact without evidentiary facts to sustain that conclusion, is insufficient. The application, therefore, by the Division for the issuance of an order requiring investigation shall be denied without prejudice. The Division shall have the right to return to the court and reapply for an order upon new facts, in the event the defendants refuse admittance of a Division worker in the future.