219 N.J. Super. 644 (1987)
530 A.2d 1309
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF-RESPONDENT,
v.
D.C. AND M.C. DEFENDANTS.
(IN THE INTEREST OF JOEL C. RINSKY, ESQ. AND JANET B. ROMANO, ESQ.), APPLICANTS-APPELLANTS.
and
IN THE MATTER OF C. MINORS, MINORS.
(IN THE INTEREST OF J. PATRICK ROCHE, ESQ.), APPLICANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 28, 1987.
Decided September 10, 1987.
*645 Before Judges MICHELS and MacKENZIE.
Joel C. Rinsky, appellant, pro se and, on the brief.
Janet B. Romano and J. Patrick Roche, for appellants.
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent Department of Law and Public Safety (Andrea M. Silkowitz, Deputy Attorney General, of counsel; Lauren Fleischer Carlton, Deputy Attorney General, on the letter brief).
Alfred A. Slocum, Public Advocate and Public Defender, attorney for respondent Department of the Public Advocate and Office of the Public Defender, (Thomas P. Hartley, Assistant Deputy Public Defender, on the brief).
*646 MacKENZIE, J.S.C. (temporarily assigned).
Joel C. Rinsky, Esq., (Rinsky) and Janet B. Romano, Esq., (Romano) are attorneys who were appointed by the Chancery Division, Family Part to represent the separate interests of D.C. and M.C., the parents of three minor children in a guardianship action instituted by the Division of Youth and Family Services (DYFS) under N.J.S.A. 30:4C-15 et seq. J. Patrick Roche, Esq., (Roche) is an attorney who was appointed to represent the interests of the children in these proceedings. The three attorneys appeal from an order of the trial court which determined that the services they rendered are compensable but not payable. Respondents are the Department of Law and Public Safety (Attorney General) and the Department of the Public Advocate and the Office of the Public Defender (Public Advocate), which had been brought before the trial court to litigate the counsel fees issue only. They agree with the trial court's determination that the fees are not payable by a state entity. In addition, the Public Advocate argues that the trial court was mistaken in its conclusion that the services of the appointed attorneys are compensable.
This court must decide whether there is any statutory or other basis for compensating the attorneys. As we observed in Crist v. N.J. Div. Youth & Family Services, 135 N.J. Super. 573, 575 (App.Div. 1975), "N.J.S.A. 30:4C-1 et seq., does not provide for the assignment of counsel for indigent parents in such proceedings or for the payment of compensation to their attorneys, and our court rules do not provide for the payment of compensation to assigned counsel." In contrast, the legislature has expressly provided for the assignment of counsel for indigent parents and children in child abuse and neglect actions brought under Chapter 6 of Title 9. See N.J.S.A. 9:6-8.21(d), (e); N.J.S.A. 9:6-8.23(a); N.J.S.A. 9:6-8.43(a).[1] Moreover, N.J. *647 S.A. 9:6-8.71 appropriates funds for compensating counsel in such proceedings.
If, however, substantive issues common to both statutory proceedings surface in the guardianship action, is there then a basis for the court to award counsel fees to appointed counsel? Does such a basis for compensation exist by virtue of the similarity of legal services rendered under Title 9 and Title 30 proceedings?
The three appointed attorneys maintain that issues of visitation of the same kind as are present in a Title 9 action, were involved in the Title 30 action and, as the trial court found, became so intertwined with the issue of termination of parental rights as to be indistinguishable. They also contend that the action could have been commenced under either Title 9 or Title 30, and their precise services, if rendered under Title 9, would have been both compensable and legally payable. For reasons hereafter stated, we hold that the services of the three appointed attorneys are neither compensable nor payable by any state entity.
Some procedural history is necessary. In 1975, DYFS filed a complaint under N.J.S.A. 9:6-8.21 et seq. and N.J.S.A. 30:4C-12 against D.C. and M.C., alleging child abuse and neglect. Pool attorneys were assigned for each parent through the Office of the Public Defender and that office also acted as law guardian *648 for the minors involved. After trial of the action in 1975, D.C. was found guilty of child abuse and neglect, and M.C. was found guilty of neglect. The case continues to be periodically reviewed by the Family Part.
In November 1983, DYFS commenced this guardianship action pursuant to N.J.S.A. 30:4C-15 et seq. against D.C. and M.C., seeking to terminate their parental rights in two of their children, Danny and Mark. The complaint was subsequently amended to seek termination of parental rights as to a third child, Michael. In December 1983, Rinsky and Romano were appointed by the trial court, on the authority of R. 5:3-4(a), to represent the parental interests of D.C. and M.C., respectively. Roche was similarly appointed to serve as law guardian for the three children in the proceedings.
An 18-day bench trial culminated in the entry of a judgment on July 31, 1985 which terminated the parental rights of D.C. and M.C. as to Mark, who was then committed to the guardianship of DYFS. The trial court found, however, that the best interests of Danny and Michael would not be served by terminating the parental rights of their parents. The order accordingly directed that temporary legal and physical custody of Danny was to remain with DYFS, while Michael would continue in the legal custody of DYFS, but in the physical custody of his parents. No appeal was taken from that judgment.
We turn then, to the circumstances giving rise to this appeal. In April 1984, Rinsky, Romano and Roche petitioned the trial court for an order compelling the Public Advocate or Attorney General to pay their reasonable counsel fees. In a decision rendered September 25, 1984, the trial court denied their motion, finding that no funds were available for such payment.
The three appointed attorneys promptly filed a notice of appeal and a notice of motion for leave to appeal. The attempted appeal as of right was dismissed, but leave to appeal was granted. By order dated December 14, 1984, this court, proceeding under R. 2:11-2, vacated the order of the trial court and *649 remanded the counsel fees issue for further proceedings. Specifically, upon conclusion of the underlying action, Rinsky, Romano and Roche were to seek an order to show cause "for payment of counsel fees directed to the entities from whom payment is sought." Furthermore, the remand order instructed the trial court to:
make findings of fact and conclusions of law as to those services which are statutorily compensable and payable and those he deems compensable but not legally payable ... The question of whether some or all of the services rendered are so intertwined as to be inseparable shall be addressed in factual findings and in legal conclusions. Likewise, the judge shall address the question of whether, in that situation, payment or fees can, under statutory and case law, be made because of the allegedly "hybrid" nature of such services. (citations omitted).
The Attorney General's subsequent motion for reconsideration of the remand order was denied.
Consistent with the remand order, the three appointed attorneys obtained an order on November 12, 1985 which directed the Attorney General and the Public Advocate to show cause why counsel should not be entitled to be paid for their legal services. Certifications were filed by the various parties in lieu of testimony. In a written opinion issued on July 3, 1986, the trial court again denied payment to the appointed attorneys. Because it found the issue of visitation in the guardianship action to be substantial and because the services rendered by appellants were so similar to those required of counsel in an action brought under Title 9, the trial court determined that their services were compensable. As the trial court explained:
The court interviewed the children and made findings of fact as to each child for the purpose of ascertaining what was in their best interest. The outcome of the fact-finding procedure would ultimately determine whether the parental rights of [M.C. and D.C.] would be terminated. The foregoing, however, was not limited to that purpose. The psychological evaluations and interviews of the children were also used to determine the issue of whether the parents would be allowed to visit the children while the trial was pending. During the trial there were several motions made ... by counsel for visitation. [Emphasis in original].
Furthermore, the trial court observed that the final judgment incorporated a determination as to visitation rights and that *650 "[t]he information, facts, evaluations and interviews by which such a determination was made was not totally separate and apart from the guardianship proceeding."
In the trial court's view, not only were the issues of visitation and termination of parental rights interrelated, but the legal services provided regarding those issues were:
so intertwined as to cause a mix which makes them inseparable, thereby rendering the services to be hybrid in nature and such hybrid services resulting from this mix of visitation and termination services should result in counsel being paid for such hybrid services rendered, just as if those services were rendered exclusively for rights of visitation. [Emphasis supplied].
The trial court, nevertheless, was constrained to conclude that appellants' services were not payable in light of Crist v. N.J. Div. Youth & Family Services, supra, and Amantia v. Cantwell, 89 N.J. Super. 7 (App.Div. 1965).
On appeal, in an endeavor to show why their services in the Title 30 action are compensable and payable, the three appointed attorneys have constructed an argument which draws from various provisions of Chapter 2 and Chapter 6 of Title 9. Their argument flows from the premise that the guardianship proceeding could have been commenced under either Title 9 or Title 30. In cases involving child abuse or neglect under Chapter 6 of Title 9, the legislature has provided funds to compensate assigned counsel; as to attorneys designated to represent indigent parents or minors in actions instituted under N.J.S.A. 9:2-18 et seq., appellants contend that it is the State's practice to compensate them. Visitation issues permeated the Title 30 guardianship proceeding and called for the same character of legal services as if the proceeding had been brought under Title 9. Appellants then conclude that the statutory basis for payment of counsel fees in Title 9 actions (and/or the State's alleged practice of payment) should apply in this particular guardianship action, despite the absence of an appropriations provision under Title 30. According to appellants, the State's decision through DYFS to proceed under N.J.S.A. 30:4C-15 et seq. must be regarded as arbitrary and should not serve as a basis for depriving them of compensation.
*651 Evaluation of this argument requires a brief survey of the statutory provisions at issue. Addressing the pertinent sections of Chapter 6 of Title 9, one finds that N.J.S.A. 9:6-8.8 explains that:
The purpose of this act is to provide for the protection of children under 18 years of age who have had serious injury inflicted upon them by other than accidental means. It is the intent of this legislation to assure that the lives of innocent children are immediately safeguarded from further injury and possible death and that the legal rights of such children are fully protected.
N.J.S.A. 9:6-8.21 et seq. governs the actions which may be taken in instances of alleged child abuse or neglect. Under N.J.S.A. 9:6-8.33, a proceeding may be initiated by the filing of a complaint alleging that a child has been abused or neglected. At the conclusion of a dispositional hearing, the court may place the child in the custody of a relative or other suitable person, or DYFS for an initial period of 18 months. N.J.S.A. 9:6-8.51; N.J.S.A. 9:6-8.54.[2]
Entitled "Dependent and Neglected Children," Chapter 4C of Title 30 addresses a wide range of matters, some of which are similar to those covered by Chapter 6 of Title 9. N.J.S.A. 30:4C-12 provides that a complaint may be filed with the Bureau of Childrens Services (now DYFS) if, among other reasons, a parent or guardian appears to be "of such vicious, careless or dissolute habits as to endanger the welfare of such child." Proof of the allegations of a complaint at a summary hearing may result in the issuance of an order transferring the care and custody of the child to DYFS for a period of 6 months. Id. Thus, it is clear that a given course of conduct by a parent or guardian may be dealt with under Title 9 or Title 30, and in either case, a temporary loss of custody may result.
Specifically at issue in this case is N.J.S.A. 30:4C-15 which deals with guardianship petitions. The statute provides:

*652 Whenever (a) it appears that a court wherein a complaint has been proffered as provided in chapter 6 of Title 9 of the Revised Statutes, has entered a conviction against the parent or parents, guardian, or person having custody and control of any child because of abuse, abandonment, neglect of or cruelty to such child; or (b) it appears that any child has been adjudged delinquent by a court of proper jurisdiction in this State; or (c) it appears that the best interests of any child under the care or custody of the Bureau of Childrens Services require that he be placed under guardianship; or (d) it appears that a parent or guardian of a child, following the acceptance of such child by the Bureau of Childrens Services pursuant to sections 11 or 12 of this act, or following the placement or commitment of such child in the care of an authorized agency, whether in an institution or in a foster home, and notwithstanding the diligent efforts of such agency to encourage and strengthen the parental relationship, has failed substantially and continuously or repeatedly for a period of more than 1 year to maintain contact with and plan for the future of the child, although physically and financially able to do so; a petition, setting forth the facts in the case, may be filed with the juvenile and domestic relations court of the county where such child may be at the time of the filing of such petition. A petition as provided in this section may be filed by any person or any association or agency, interested in such child, or by the Bureau of Childrens Services in the circumstances set forth in items (c) and (d) hereof.
Unlike an action under N.J.S.A. 30:4C-12, which may result in only a temporary change in the care and custody of a child, see In re Adoption of Two Children by A.M. and L.M., 170 N.J. Super. 320, 328 (App.Div. 1979), a proceeding under N.J.S.A. 30:4C-15 may lead to the permanent termination of parental rights, and hence a change in guardianship. Significantly, there is no cognate provision in Chapter 6 of Title 9 under which a change in guardianship may be effected. As with N.J.S.A. 30:4C-12, relief which may be granted under N.J.S.A. 9:6-8.21 et seq. is temporary in nature.
It should be noted, however, that Chapter 2 of Title 9, entitled "Care, Custody, Guardianship and Support of Children in General," also contains provisions dealing with termination of parental rights. N.J.S.A. 9:2-18 empowers an approved agency, which is providing supervision of a child, to institute an action to terminate the rights of the child's parents and to have custody transferred to the agency. An "approved agency" is "a legally constituted agency having its principal office within or without this State, which has been approved, pursuant to law, to place children in New Jersey for purposes of adoption." *653 N.J.S.A. 9:2-13(a). N.J.S.A. 9:2-19 specifies the grounds on which a court may declare that a parent or guardian has no further right to custody of, or control and authority over, the child. The court's power to enter a judgment terminating parental rights and the effect of such a judgment are expressed in N.J.S.A. 9:2-20. Chapter 2 of Title 9, like N.J.S.A. 30:4C-15 et seq., contains no section appropriating funds for the implementation of the provisions concerning the termination of parental rights.
Finally, one of the most significant differences between the provisions of Chapter 6 of Title 9 and those of Chapter 4C of Title 30 pertains to compensation of assigned counsel. As noted, there is an explicit provision which allows for the compensation of counsel chosen to represent indigents or minor parties in a proceeding under Chapter 6 of Title 9. N.J.S.A. 9:6-8.71 provides:
There shall be appropriated from the general fund such funds as are necessary to implement the provisions and to effectuate the purposes of this act as shall be included in any general or supplemental appropriation act.
There is no comparable appropriations section in Title 30, even though actions very similar to Title 9, Chapter 6 proceedings may be instituted under Title 30. Thus, although indigent parents and minors have a right to counsel in protective service proceedings brought under Chapter 6 of Title 9 as well as in actions to terminate parental rights brought under Chapter 4C of Title 30, appointed counsel has a statutory right to be paid only with respect to the former.[3]
With this overview of the pertinent statutory sections, we proceed to analyze the first aspect of the counsel fees issue: Are the legal services provided by the three appointed attorneys *654 compensable? In this context, compensable legal services are those which a court may acknowledge through the award of a counsel fee. It is axiomatic that absent contract, a court may award a fee to an attorney only where authorized by law to do so. Cf. Klacik v. Kovacs, 111 N.J. Super. 307 (App.Div. 1970). Such an award can be made in those actions designated in R. 4:42-9(a)(1) through (6), where another court rule so provides, see R. 4:42-9(a)(7), or where expressly permitted by statute, see R. 4:42-9(a)(8).
Examples of other court rules which expressly authorize the allowance of counsel fees by a trial court include R. 4:14-8 (failure to attend deposition); R. 4:23-3 (effect of failure to admit); R. 4:37-4 (costs of previously dismissed action); R. 4:46-6 (bad faith opposition to summary judgment); R. 4:52-7 (labor disputes); R. 4:58-2 (non-acceptance of claimant's offer); and R. 4:58-3 (non-acceptance of offer of non-claimant). An appellate court may also allow counsel fees in three particular instances, see R. 2:11-4. Court rules which impliedly authorize counsel fees are R. 4:50-1 (relief from judgment or order); R. 1:10-5 (enforcement of litigant's rights); R. 5:14-3 (paternity actions); and R. 5:5-5 (failure to participate in Early Settlement Program). A non-exhaustive list of statutes which permit counsel fees are N.J.S.A. 59:9-5 (Tort Claims Act); N.J.S.A. 56:10-1, 10 (New Jersey Franchise Practices Act); N.J.S.A. 56:8-19 (Consumer Fraud Act); N.J.S.A. 45:15-34, 37 (Real Estate Guaranty Fund); N.J.S.A. 2A:35A-10 (Environmental Rights Act); and N.J.S.A. 39:6A-24, 34 (Automobile Reparation Reform Act).
The three appointed attorneys do not presently contend that the statute under which this action was brought or the rule by which they were appointed explicitly provides that the services they rendered are compensable. Neither N.J.S.A. 30:4C-15 et seq. nor R. 5:3-4(a) authorizes an award of counsel fees. Instead, appellants have constructed a "bootstrap" argument involving N.J.S.A. 9:2-18 et seq. and N.J.S.A. 9:6-8.21 et seq., statutes which were not even implicated in this action.
*655 In doing so, Rinsky, Romano and Roche have confused many of the statutory provisions. They first contend that the State has a practice of compensating attorneys who are designated to represent indigent parents or minors in actions under N.J.S.A. 9:2-18 et seq. This claim is unfounded. There is no evidence that the State compensates appointed counsel in termination proceedings instituted under N.J.S.A. 9:2-18 et seq. In its opinion of July 3, 1986, the trial court alluded to the fact that the Attorney General compensates pool attorneys for "services rendered in matters of visitation under Title 9" (emphasis supplied). Presumably, the "matters of visitation" refer to actions brought under N.J.S.A. 9:6-8.21 et seq., but not to N.J.S.A. 9:2-18 et seq. Indeed, this construction is evident when the excerpt is read within the general context and tenor of the trial court's opinion. Remuneration, then, is paid pursuant to the authority of N.J.S.A. 9:6-8.71.
Moreover, the appropriations provision of Chapter 6 applies only to proceedings brought under that chapter, not to those initiated under Chapter 2 of Title 9. Thus, the statutory authority and the established practice of compensating pool attorneys in "visitation" actions under Chapter 6 of Title 9 provide no basis to compensate appointed counsel in actions to terminate parental rights in Title 30 actions. Services rendered by appointed counsel in termination of parental rights cases, brought under N.J.S.A. 30:4C-15 et seq. or under N.J.S.A. 9:2-18 et seq., are not statutorily compensable.
Furthermore, appellants are mistaken in arguing that this termination action could have been brought under Chapter 2 of Title 9, as the express statutory language and judicial interpretations make clear. DYFS could not have instituted an action to terminate parental rights pursuant to N.J.S.A. 9:2-18 et seq., as it is not an "approved agency" within the meaning of N.J.S.A. 9:2-13(a). As explained by the court in In re Adoption of Two Children by A.M. and L.M., supra, 170 N.J. Super. at 330-331:

*656 If changed circumstances caused DYFS to believe that the best interests of the children required the termination of parental rights and the placement of the children under proper guardianship, it should have filed a petition with the county Juvenile and Domestic Relations Court under N.J.S.A. 30:4C-15 et seq. In this regard, it should be noted that DYFS is a supervising arm of the State, rather than "an approved agency" as specified in N.J.S.A. 9:2-18. See In re Guardianship of R.G. and M.G., 106 N.J. Super. 262, 264 (App.Div. 1969). If the court, in such proceeding, determined after a hearing that such guardianship was required, an order would have been made terminating parental rights and committing the children to the guardianship and control of DYFS, in which case the Division would have become the legal guardian of the children for all purposes, including placement for adoption. N.J.S.A. 30:4C-20. [Emphasis in original].
Similarly, appellants' argument that the guardianship action could have been brought under Chapter 6 of Title 9, as well as under Title 30, reveals a misconception of the clear distinctions between the two types of proceedings. The trial court, in its written opinion, stated, "It is admitted by all parties involved, and particularly by the Attorney General, that this suit could have been commenced under Title 9 or Title 30." Appellants seize upon this language to contend that "[u]nder either statute if abuse, neglect or cruelty is alleged and proven, the court is empowered to remove the child, terminate visitation, grant the State guardianship or otherwise adjudicate the matter."
In his statement, the Attorney General may have been referring to N.J.S.A. 30:4C-15(a), which indicates that the entry of a conviction under Chapter 6 of Title 9 is one ground for the filing of a guardianship petition. Irrespective of the precise meaning of the statement, appellants' interpretation goes too far. As previously discussed, a termination of parental rights cannot be effected through an action under N.J.S.A. 9:6-8.21 et seq. Such permanent relief can only be achieved through guardianship proceedings commenced under Title 30.
In view of the parent-child history in this family, DYFS apparently believed in 1983 that a final severance of that relationship was necessary in the case of three children. Therefore, DYFS sought this relief pursuant to N.J.S.A. 30:4C-15 et seq. No other statutory basis for ending the parent-child *657 relationship was available. The argument that the State could have proceeded with the termination action under Chapter 6 of Title 9 is thus clearly erroneous. The corresponding argument that DYFS arbitrarily decided to proceed under Title 30 so as to defeat appellants' claim to compensation is utterly without merit.
The last prong of appellants' argument is similarly flawed. The contention is that since visitation was a central and continuing issue throughout the Title 30 proceeding, counsel should be compensated for their services relating to visitation because the same type of services, if rendered in a protective service action under Chapter 6 of Title 9, would be compensable and payable.[4]
During trial, there were several motions for visitation. Moreover, the final order of July 31, 1985 not only resolved the issue of guardianship, but also temporarily settled the visitation issues which necessarily surfaced as a result of the court's refusal to terminate parental rights as to Danny and Michael. The existence of visitation issues cannot obscure the fact that the action was instituted under N.J.S.A. 30:4C-15 et seq. to terminate parental rights. If the existence of visitation issues justified the award of fees without regard to the type of proceeding in which those issues surfaced, then the State would have to be responsible for the legal fees for any court appointed guardian ad litem in any custody case. But see generally, State in Interest of D.F., 145 N.J. Super. 381 (App.Div. 1976) (recognizing that agencies such as DYFS must perform their duties under N.J.S.A. 30:4C-1 et seq. within budgetary constraints). Such a result could not have been contemplated by our legislature in enacting an appropriations provision in N.J.S. *658 A. 9:6-8.71, given the limited applicability of that section of the Act.
In their attempt to present and establish authority for an award of counsel fees, appellants have tried to integrate inapplicable statutory sections into what is, and always was, a Title 30 guardianship proceeding. The existence of visitation issues does not becloud the essential nature of the action or alter the express statutory provisions which must govern. In the absence of appropriate authorization, this court concludes that the services of the three appointed attorneys are not compensable.[5] *659 The aspect of the trial court's decision finding the attorneys' services to be compensable was erroneous.
However, the trial court's ultimate determination regarding payability was correct. Even were these services compensable, which they are not, the court could not order either the Attorney General or the Public Advocate to pay the requested fees. That there is no enforceable claim to payment is supported by our holding in Crist v. New Jersey Div. Youth & Family Services, supra, 135 N.J. Super. 573. There, the trial court's holding that indigent parents are entitled to the appointment of counsel in termination proceedings brought against them under N.J.S.A. 30:4C-1 et seq. was affirmed. However, the judgment directing DYFS to provide compensation for appointed counsel in such proceedings was reversed. Given the absence of an appropriations or appointment provision in N.J.S.A. 30:4C-1 et seq., there was accordingly "no basis for compensating counsel assigned to represent indigent parents in these proceedings." Id. at 575. As we explained:
Furthermore, since no appropriation had been made by our Legislature to the Division of Youth and Family Services for the payment of compensation to counsel assigned to represent indigent parents in proceedings of this nature, the trial judge was without power to order the Division of Youth and Family Services to compensate assigned counsel. As Chief Justice Weintraub pointed out in Fitzgerald v. Palmer, 47 N.J. 106 (1966):
* * * No money may be drawn from the State treasury but for appropriations made by law. Const., Art. VIII, § II, ¶ 2. The judiciary could not order the Legislature to appropriate money, or the governor to approve an appropriation if one were made. * * * [at 108] [Id. 135 N.J. Super. at 576].
Moreover, we opined that the duty of representing parties without compensation in termination of parental rights cases *660 would not pose an undue hardship upon the attorneys of this State. In that respect, it was noted:
While we recognize that this will entail some burden upon the members of the bar, there is no suggestion that the burden would be unreasonable or likely to become so in the immediate future. The Attorney General has informed us that as of June 1, 1975 there were pending before the Juvenile and Domestic Relations Courts only 73 guardianship actions instituted for termination of parental rights under N.J.S.A. 30:4C-15, with an additional 115 cases awaiting filing, and approximately 233 protective service complaints for temporary custody under N.J.S.A. 30:4C-12. [Id. at 577 (citations omitted)].
This court's holding in Crist was followed in N.J. Div. of Youth & Family Serv. v. Wandell, supra, 155 N.J. Super. 302 (J.D.R.Ct. 1978). There, the court held that indigent minors who are the subject of proceedings initiated under N.J.S.A. 30:4C-1 et seq. are entitled to independent, assigned counsel. Id. at 306. In reaching this conclusion, the Wandell court placed great weight upon the legislature's apparent regard for the importance of counsel for minors in proceedings instituted under N.J.S.A. 9:6-8.23 et seq. Although the legislature had expressly provided for funds to implement the statutes pertaining to alleged child abuse and neglect, the court in Wandell recognized that it was powerless judicially to compel similar appropriations for termination proceedings. The court thus concluded:
In accordance with the guidelines set by the Appellate Division in Crist v. DYFS, supra, until such time as the Legislature may empower the office of the Public Advocate to assume this type of representation, the Juvenile and Domestic Relations Court will assign counsel from the private bar to serve without compensation. State v. Rush, 46 N.J. 399, 408 (1965). [Ibid.].
State v. Rush, supra, likewise sheds some light on the present controversy. There, our Supreme Court considered whether counsel assigned to represent indigent criminal defendants was entitled to compensation and reimbursement of out-of-pocket expenses. Id. at 402. Although recognizing that an attorney owed a duty to the Court to represent indigent defendants without charge, id. at 410, the Court examined "whether the members of the bar should continue to bear alone the constitutional duty of the State to provide counsel for the indigent." Id. at 409. The Court, concluding that attorneys *661 should not be forced to assume this awesome responsibility, explained:
Today, with rapidly changing concepts relating to sundry matters, such as confessions, search and seizure, joinder of defendants, right to counsel, etc., the defense of criminal charges consumes far more time than when we came to the bar. To this must be added the impact of the right of the indigent, without cost, to appeal, and to press post-conviction proceedings and as well attacks in the federal courts. Further, the total demand will likely increase, for while criminal proceedings now dominate the stage, in the wings are other matters  minor offenses, juvenile delinquency, and civil commitments, areas in which counsel are now furnished but on a selective basis. We are satisfied the burden is more than the profession alone should shoulder, and hence we are compelled to relieve the profession of it. [Id. at 412].
Furthermore, the Court found that the requisite statutory authority existed for it to order payment. N.J.S.A. 2A:158-7 directs that "the county treasurer shall pay `All necessary expenses incurred by the prosecutor for each county in the detection, arrest, indictment and conviction of offenders against the laws,' even in excess of the sums appropriated if such further expenditures are authorized by the assignment judge." Id. at 414. Interpreting "necessary expenses" to encompass the cost of providing counsel for an indigent accused, the Court concluded, on the basis of explicit legislation, that it was empowered to mandate compensation for assigned counsel. Id. at 414-415.
Our Supreme Court was faced with a similar issue in State in Interest of Anthony Antini, Jr., 53 N.J. 488 (1969). After the United States Supreme Court ruled in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) that indigent juveniles have a constitutional right to counsel in delinquency proceedings which could result in their commitment, attorneys chosen to represent juveniles in such an action sought compensation for their services. In assessing the validity of these claims, the Court observed:
The resulting burden on the bar since September 1967 has been a substantial one. This is due not only to the command of Gault, but also to a large increase in the number of juvenile complaints. In the 1967-68 court year about 36,000 such complaints were filed compared to approximately 30,000 the proceeding *662 year. About 8,500 cases were pending at the end of the year as against 5,000 at the end of the prior year. The upward trend continues. From September 1, 1968 through January 31, 1969, about 20% more complaints were filed than during the same period the previous year. 7,600 complaints were pending on the date last mentioned. While we have no exact statewide figures on the number of assignments made, we do know that, during the five month period just referred to, 4,568 complaints were disposed of at formal hearing, which is the case classification under our rules requiring counsel. In Union County, we are told, 514 assignments have been made since September 1967 from a master list of 406 attorneys, and attorneys in that county can expect to be assigned about every nine months. [Id. 53 N.J. at 493-494].
The Court reasoned that the same statutory authority upon which its decision in Rush was predicated would permit fees to be paid to counsel appointed to represent indigent juveniles. However, by the time Antini, Jr. was decided, the legislature had acted to shift the responsibility of representing indigent juveniles to the Office of the Public Defender. Thus, the Court simply held that if the appropriations for this type of representation proved inadequate, appointed counsel would be compensated as set forth in Rush. Id. at 494-495.
Several principles emerge from these decisions. The first is that pursuant to their duty "to assist the Court in the business before it," Rush, 46 N.J. at 410, members of the bar may be called upon to render free legal assistance to indigents constitutionally entitled to be represented by counsel. In any event, "[i]t has long been regarded as an attorney's duty to donate certain services necessary to the legal system unless such obligations become unreasonable or too burdensome." In re Morse, 157 N.J. Super. 104, 106 (App.Div. 1978). With respect to the obligation of attorneys to represent indigent or minor parties in proceedings to terminate parental rights, our courts have held that the burden imposed on the private bar is not too exacting. See Crist, supra.
Furthermore, Crist makes clear that the New Jersey Constitution prohibits the judiciary from compelling a state *663 agency to compensate a private attorney unless the legislature has appropriated funds for such purposes. 135 N.J. Super. at 576. See also State v. Monaghan, 184 N.J. Super. 340, 344 (App.Div. 1982) ("[U]ntil the necessary appropriations are made [for the Public Defender to provide for the representation of those charged with non-indictable offenses which may lead to imprisonment or other consequences of magnitude], counsel will be assigned to represent indigent defendants in matters falling within the purview of the statute [N.J.S.A. 2A:158A-5.2], whether in the municipal court or on appeal in the Law Division, without compensation." (footnote omitted)); Amantia v. Cantwell, supra, 89 N.J. Super. at 12-15 (even though technicians were statutorily entitled to pay differential for work performed in connection with threatened blockade of Berlin, court was powerless to order appropriation of funds to compensate those workers).
Applying these principles to the instant case leads to the conclusion that Rinsky, Romano and Roche cannot be compensated for the services they rendered in these termination proceedings. There is no rule or statute which makes their services compensable. Since protective service proceedings are disparate from those instituted to effect a change in guardianship, the legislature's appropriation of funds for actions under Chapter 6 of Title 9 cannot be deemed to apply to Title 30 actions. Nor are they entitled to be paid. The legislature has given no indication that it intends that a state entity should provide the manpower or should assume the cost for representing indigents or minors in actions to terminate parental rights. Cf. Monaghan, supra, 184 N.J. Super. at 343. Thus, even were this court to determine that the burden of providing free counsel to parties in termination proceedings should not be borne solely by the private bar, it would be powerless to order any state entity to compensate appellants.
Accordingly, the order under review is affirmed.
NOTES
[1] N.J.S.A. 9:6-8.23(a) provides, in pertinent part, "Any minor who is the subject of a child abuse or neglect proceeding under this act must be represented by a law guardian to help protect his interests and to help him express his wishes to the court." "Law Guardian" is defined in N.J.S.A. 9:6-8.21(d) as "an attorney admitted to the practice of law in this State, regularly employed by the Department of the Public Advocate, and designated under this act to represent minors in alleged cases of child abuse or neglect." In addition, in accordance with N.J.S.A. 9:6-8.43(a), "The court shall advise the parent or guardian of his right to have an adjournment to retain counsel and consult with him. The court shall advise the respondent that if he is indigent, he may apply for an attorney through the Department of the Public Advocate." An attorney from the Department of the Public Advocate is appointed "in order to avoid conflict between the interests of the child and the parent or guardian in regard to representation." N.J.S.A. 9:6-8.21(e).
[2] An initial order of placement under N.J.S.A. 9:6-8.54 may be extended for additional one-year periods until the child's eighteenth birthday. After the child's eighteenth birthday, his consent is necessary for any placement or extension. N.J.S.A. 9:6-8.54(c).
[3] Various statutory provisions express the right to legal representation in proceedings initiated under Chapter 6 of Title 9. See n. 1, supra. Decisional authority has recognized and extended the right to representation to parents and children in Title 30 guardianship proceedings. See Crist, supra, 135 N.J. Super. at 575; N.J. Div. of Youth and Family Serv. v. Wandell, 155 N.J. Super. 302, 306 (J.D.R.Ct. 1978); cf. Rodriguez v. Rosenblatt, 58 N.J. 281, 295 (1971).
[4] According to appellants, counsel fees have been paid "in this very case" to counsel that represented the same parties on previous visitation motions. However, those motions were filed in connection with the 1975 child abuse and neglect proceeding. DYFS had moved in the course of this original action to suspend visitation between D.C. and M.C. and two sons, Danny and Mark.
[5] The lack of a specific rule or statutory authority has served many times as the basis for a court to deny compensation to attorneys. See, e.g., Board of Ed., Borough of Union Beach v. N.J.E.A., 53 N.J. 29, 48-49 (1968) (denying allowance to school board which successfully enjoined an illegal teacher "job action"); Housing Auth. of Long Branch v. Valentino, 47 N.J. 265, 268 (1966) and State v. Mandis, 119 N.J. Super. 59, 60 (App.Div. 1972), certif. den. 61 N.J. 156 (1972) (denying allowance in a condemnation action); Perrella v. Board of Education of Jersey City, 51 N.J. 323, 343-344 (1968) (denying allowance to attorney for public employee who had been improperly discharged); Atlas v. Silvan, 128 N.J. Super. 247, 253 (App.Div. 1974) (denying counsel fees for a successful defense of a broker's action for commissions); Berthelsen v. Hall, 194 N.J. Super. 22, 26-27 (App.Div. 1984) (denying attorney's fees as sanction for violation of R. 1:4-8 in view of failure of that rule to so provide); Curtis v. Finneran, 83 N.J. 563, 571 (1980) and Weiman v. Ippolito, 129 N.J. Super. 578, 587-588 (App.Div. 1974) (denying plaintiff counsel fees in a wrongful death action); Miller v. Mun. Council of Wayne Tp., 139 N.J. Super. 526, 528 (App.Div. 1976), certif. den. 71 N.J. 494 (1976) (denying counsel fees to plaintiff mayor prosecuting action to test the scope of his powers under the Optional Municipal Charter Law); Golaine v. Cardinale, 142 N.J. Super. 385, 401-404 (Law Div. 1976), aff'd o.b. 163 N.J. Super. 453 (App.Div. 1978), certif. den. 79 N.J. 497 (1979) (denying counsel fees to improperly removed municipal planning board member); Endress v. Brookdale Community College, 144 N.J. Super. 109, 147-149 (App.Div. 1976) (counsel fees denied in civil rights action brought in state court under federal legislation, although fees would have been allowable by federal court); Kronisch v. The Howard Savings Institution, 161 N.J. Super. 592, 608 (App.Div. 1978) (denying counsel fees to unsuccessful class-plaintiffs); DeFlavis v. Princeton Home Inspection Service, Inc., 182 N.J. Super. 473, 475 (App.Div. 1982) (no counsel fee allowable on successful motion to dismiss for lack of jurisdiction); Fallon v. Scotch Plains-Fanwood Bd. of Ed., 185 N.J. Super. 142, 151 (Law Div. 1982) (parents not entitled to counsel fee award in their successful action to vindicate handicapped child's rights); State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 503-505 (1983) (on cross-claim by purchasers against vendor who fraudulently concealed pollution problems occasioning DEP action against both, purchasers not entitled to recover portion of counsel fees attributable to defending their own acts); Edgewater Inv. Associates v. Borough of Edgewater, 201 N.J. Super. 267, 285-286 (App.Div. 1985) (counsel fees not allowed in challenge to retroactive application of statute affecting contract rights).